CENTRAL VERMONT R. CO. v. SOPER et al.

(Circuit Court of Appeals, First Circuit.   January 12, 1894.)

No. 75.

1. ACTIONS—JOINDER OF CAUSES.
Under the Massachusetts practice acts, a count on a bill of lading may be united in the same declaration with a count in tort for negligence in the loss of the goods shipped.

2. PLEADING—CONDITIONS SUBSEQUENT—WAIVER.
The defense to an action against a carrier for loss of goods shipped, that the claim was not made nor the suit brought within the time stipulated in the contract of shipment, must be specially pleaded; but, if the objection that the answer fails to set up such defense is not taken at the trial, it will be considered waived.

3. APPEAL—REVIEW—BILL OF EXCEPTIONS.
On questions of admissibility of evidence, not involving any substantial error contrary to the law and justice of the case, the court will not look outside the bill of exceptions, although the bill assumes to make all the evidence and proceedings in the court below a part of it.

4. TRIAL—OBJECTIONS TO EVIDENCE.
An objection to testimony as irrelevant, where such testimony is admitted on the understanding that it is to be connected, to be available, must be renewed after the failure to connect it.

5. EVIDENCE—COMPETENCY—OPERATION OF MACHINERY.
On the question of the origin of a fire in an elevator, testimony of witnesses is admissible to show the tendency of the bearings of the machinery to become heated, and of the inflammable character of the dust collecting around such bearings, and that a previous fire was caused by such heated bearings.

6. APPEAL—REVIEW—OBJECTIONS NOT RAISED BELOW.
Where an instruction is strictly in accordance with law, but, by the way in which some expressions were emphasized, might possibly mislead the jury, and the party does not object to any specific expressions, nor ask the court to give any additional instructions, an exception thereto is unavailing.

7. BILL OF LADING—STIPULATION AS TO TIME FOR MAKING CLAIM FOR LOSS OR DAMAGE.
A stipulation in a bill of lading which requires a written claim for loss or damage to be made within 30 days after the loss or damage occurs, where the entire transit may not unreasonably consume the whole of such time, is unreasonable and void.

8. SAME—LIMITATION OF ACTION FOR LOSS OR DAMAGE—WANT OF KNOWLEDGE.
A stipulation in a bill of lading—appearing to be in common and public use, with general acquiescence, and agreed to by the parties without protest—requiring an action for loss or damage to be brought within three months after it occurs, will not, with reference to the particular transit in this case and the circumstances shown, be held unreasonable and void; and it cannot be controlled by want of knowledge of loss or damage, where such want of knowledge is not due to extraordinary circumstances.

In Error to the Circuit Court of the United States for the District of Massachusetts.

At Law.   Action by John E. Soper and others against the Central Vermont Railroad Company for the loss of 3,600 bushels of grain.   Verdict and judgment for plaintiffs.   Defendant brings error.   Reversed.

The bill of exceptions was as follows:

This was an action for the loss of certain grain.   The plaintiffs' declaration was in six counts.   The defendant, by its answer, denied generally the

allegations of the plaintiffs, and also claimed that the grain was being transported under certain bills of lading, and that, by the terms of said bills of lading, which being upon the plaintiffs, the defendant was not liable.

In the opening of their case, the plaintiffs introduced six bills of lading. The bills of lading were all dated August 11, 1890, except one, which was dated August 18, 1890. In all other respects, they were alike. A copy of one of them is attached to, and made a part of, this bill of exceptions.

It appeared that the grain in question was being transported from Chicago, in the state of Illinois, under these bills of lading, to Boston, in the state of Massachusetts. In the course of such transportation, the grain was brought by boat from Chicago to Ogdensburg, N. Y., where it was unloaded into the elevator of the defendant, and thence transferred to the cars. Henry B. Moore, one of the plaintiffs, testified that, at the time they bought the grain in suit, it was probably in the elevator of the defendant at Ogdensburg; that the indorsement, "Hold at Ogdensburg for orders," was made upon all the bills of lading by their instructions; that although the destination of the grain, as minuted upon the bills of lading, was Boston, the grain was intended for sale at New England points other than Boston; that the purpose of ordering the grain held at Ogdensburg was to enable them to change the destination, and order it forwarded to its proper destination, after it was sold; and that, in case of a bill of lading so stamped, the defendant, in the ordinary course of business, would have no right to load and forward the grain until so directed by them. He further testified that they had been extensive shippers of grain by the defendant's route for some years, and when grain was held at Ogdensburg by their direction, as this grain was, they were accustomed to insure it against loss by fire at their own expense. It also appeared that a portion of the grain sued for was covered by insurance which the plaintiffs had taken out, and on account of which they received a certain sum after the commencement of this suit, which the plaintiffs agreed should be credited on account of this claim in suit; but this became immaterial by the election of the plaintiffs to proceed upon the third count, as hereinafter stated.

It was conceded that the grain in question was destroyed by fire while in the defendant's elevator at Ogdensburg, and before the plaintiffs had given orders to forward the same. The plaintiffs claim that the defendant had been guilty of negligence in the management of its elevator in which the grain was stored, which contributed to the loss, for which the defendant was liable in this action. It appeared that the fire in question was first discovered a little before five o'clock in the morning of Tuesday, September 9, 1890. The elevator had been started at seven o'clock in the morning of the day previous, and had run, with an hour's intermission for noon, and another hour's intermission for supper, until between eight and nine o'clock in the evening, when it was shut down; and the entire crew left the building, and went to work in what was known as the "New Elevator," situated between two and three hundred feet from the elevator in question, which was known as the "Old Elevator." The plaintiffs claimed, in the opening of their case, that the fire originated at the foot of what was known as the "lofting leg." This lofting leg was a piece of machinery by which the grain was carried from the bottom to the top of the elevator. It consisted of an iron tube inside, which ran a belt upon which were fastened, at intervals of about two feet, buckets. This belt passed over a pulley at the top of the lofter, about three and one half feet in diameter, and over another at the foot of the lofter, about two feet in diameter. The grain was carried in these buckets from the bottom to the top of the building, and there discharged into spouts by which it was conveyed to the bins in different parts of the elevator. The pulley at the bottom of the lofting leg made about ninety-six revolutions per minute; and the claim of the plaintiffs was that the bearings at the sides of this pulley had become heated, and thereby ignited the dust which had accumulated upon them, from which the fire was communicated to the building. There was no direct evidence that the fire started at the foot of the lofting leg, nor as to the place or manner of its origin.

The plaintiffs introduced as a witness one Aaron Linton, who testified that he was for many years foreman in this elevator, and well acquainted with

its construction and method of operation. The witness had ceased to be foreman August 14, 1887, and from that time had not been employed in or about the elevator. The witness testified, among other things, that the bearings of this pulley at the foot of the lofting leg were beneath the elevator floor, and were oiled by pouring oil into two pieces of pipe, about two feet long, which led from above the floor down into the bearings. He was allowed to testify, against the objection and exception of the defendant, that while he was foreman of the elevator these bearings frequently became heated, that there was a tendency for dust to accumulate at that point, and that there was also a tendency for the pipes to become clogged and filled with dust and grease. He further testified that there were plugs in the end of these pipes, which were removed when the oil was poured in. This evidence was admitted, as appears in the report of the evidence, upon the understanding that the plaintiffs would show that the condition of things at the foot of the lofting leg at the time of the fire was substantially the same as when the witness was in the defendant's employ.

The plaintiffs introduced, the deposition of one Timothy O'Connor, who testified that he was at the time of the fire, and for some time previous had been, what was known as "weighman" in the old elevator; that in that capacity he was assisted by another weighman, whose duties were the same as his own; that he was required to weigh the incoming grain for one hour, and then to lay off for one hour; that, as weighman, he stood about eight feet distant from the foot of the lofting leg; that, when not weighing, a part of his duty was to oil the bearings at the foot of this leg; and that he oiled them once an hour. Against the objection and exception of the defendant, this witness was allowed to testify as follows:

"Q. Did you ever know the bearings at the foot of the lofting leg to become heated? A. I do.

"Q. You have known it? A. Yes, sir.

"Q. How long prior to this time had you noticed it? A. I do not remember.

"Q. About how long before? A. I do not remember.

"Q. Was it a month? A. It might have been less.

"Q. You say it might have been a month. Would you say two weeks? A. I do not remember.

"Q. All I want to get at is your best understanding. A. I will say a month.

"Q. These bearings, you say, would become heated at this point? A. Yes, sir.

"Q. Would they ignite any dust or accumulations there? A. Yes, sir.

"Q. Have you ever known the dust to become ignited? A. Yes, sir.

"Q. Many times? A. Once.

"Q. Was this the time you were speaking of? A. No, sir."

The same witness testified that on the day before the fire he had discharged his usual duties as weighman in the elevator, that he had oiled the bearings at the foot of the lofting leg at 6:30 o'clock in the evening, and that at no time during the day had he noticed any indications that the bearings were heated.

The plaintiffs also introduced one Robert H. Jenkins, who testified that he had had considerable experience in the management of elevators, that the dust which accumulated in the operation of handling grain in the elevator was very combustible, and that if this dust was suffered to remain upon a bearing, and the box became sufficiently heated, it would burn. Having so testified, he was permitted to answer the following questions, against the objection and exception of the defendant:

"Q. Whether or not there is a tendency, in running an elevator, for the machinery to get hot? A. Yes, sir; there is.

"Q. What is necessary to prevent it? A. Well, a box may get heated from the shaft being out of line, or a box may get heated if no oil comes onto the spindle,—the arbor of the shaft. The oil tube may be clogged up, and the box get heated from friction, or the shaft may get heated from being out of line. Either case will produce a hot box."

There was no direct evidence in the case tending to show that any shaft in the defendant's elevator was out of line, or that the oil tubes to the bear-

ings at the foot of the lofting leg, or to any other bearings in the defendant's elevator, had become clogged. All the foregoing testimony was introduced by the plaintiffs in the opening of their case.

At the close of the plaintiffs' case, the defendant moved that the plaintiffs be required to elect upon which count in the declaration they would proceed, and the plaintiffs elected to proceed upon the third count. At the close of the case, and before the same was submitted to the jury, the defendant filed a motion that the court direct a verdict in its favor—First, for that the plaintiffs could not proceed against the defendant upon its common-law liability as a common carrier, as they were attempting to do by electing to proceed upon the third count in the declaration, but must recover, if at all, upon the contract as determined by the bill of lading; second, for that there was no evidence of any neglect upon the part of the defendant, which should be submitted to the jury. This motion the court overruled, and the defendant excepted.

The defendant also filed a motion that the court direct a verdict in its favor for that it appeared that no notice was given within thirty days, and that the suit was not begun until more than ninety days after the happening of the loss. This motion was also overruled by the court, and the defendant excepted. Copies of both these motions are attached to, and made a part of, the bill of exceptions. The evidence, exhibits, and the charge of the court, are referred to, and made a part of this bill of exceptions.

In reference to the right of the plaintiffs to recover, notwithstanding that the suit was not begun within ninety days from the happening of the fire, the court instructed the jury as follows: "As to the provision, gentlemen, which provides that suit must be brought within ninety days, my instruction is that this limitation is binding upon the plaintiffs, and they would be bound to pursue their remedy within ninety days, provided they had full knowledge of the cause of the fire. But if the consignees or plaintiffs were not in possession of the facts and circumstances or situations concerning the loss, and were not wanting in the exercise of reasonable diligence to ascertain the situation, then it would work an unreasonable limitation, if allowed to operate to defeat the plaintiffs' right of recovery, provided, of course, you should find that the defendant was negligent. But if you should find that the plaintiffs had full knowledge within the ninety-days period of the cause of the fire, or if, by the exercise of reasonable diligence, they could have discovered the cause, then they cannot recover, as their suit should have been brought within that period; and upon this question the burden is on the plaintiffs to show want of knowledge, and the exercise of due diligence; but you may find the fact in view of all the evidence from both sides, considering all the situations and circumstances, and whether the cause was clothed in obscurity or otherwise." To the submission of this question to the jury, and to the terms in which it was submitted, the defendant excepted.

The defendant claimed that, from all the circumstances in the case, it was evident that the fire was of incendiary origin. In reference to this aspect of the case, the court instructed the jury: "Now, gentlemen, if you should find that this fire did not result from the defective appliances, or from the gathering debris, but was the result of incendiarism, the defendant will not be liable, provided the defendant furnished reasonable watchmen, and other reasonable protection against such hazard. Of course, a party having an obligation upon them to protect property must exercise reasonable care to protect it against all hazard. There can be no arbitrary rule as to the number of watchmen, but the provision should be reasonable with respect to all risks and hazard of this kind. If you should find, therefore, that the fire was set, and that the defendant did not provide reasonable safeguards by way of watchmen,—a reasonable number, or reasonably prudent and safe watchmen, —and that caused or permitted the setting of it, then the plaintiffs would be entitled to recover." To the charge as above given, in this respect, the defendant excepted.

### C. A. Prouty and Sigourney Butler, for plaintiff in error.

I. The testimony of Mr. Linton, who was foreman at the elevator previous to 1887, that the bearings at the foot of the lofting leg frequently became

heated, was inadmissible. The time referred to was more than three years before the happening of the fire. It does not appear, nor can it be fairly inferred, that the bearings at the foot of the lofting leg ever became heated if they were properly cared for. If the plugs in the ends of the pipes which served as oil tubes were suffered to remain out, so that the tubes became filled up with dirt and grease, and the oil did not find its way into the bearings, they became heated. But that the employes, whose business it was to oil these bearings when Mr. Linton was foreman, in 1887, neglected their duty on some occasions, had no possible tendency to show that the employes of the defendant also neglected their duty at the time in question. It is not permissible to show that a person is habitually careless, as bearing upon the question whether he has been careless upon a particular occasion. Gahagan v. Railroad Co., 1 Allen, 187; Maguire v. Railroad Co., 115 Mass. 239; Whitney v. Gross, 5 N. E. 619, 140 Mass. 232; Propsom v. Leathem, (Wis.) 50 N. W. 586.

II. The testimony of Mr. O'Connor that at one time, about a month before the happening of the fire, the bearings at the foot of the lofting leg became sufficiently heated to ignite the dust upon them, does not tend to show that they did so become heated upon the occasion in question, and is inadmissible. 1 Greenl. Ev. § 52; 1 Best, Ev. pp. 353, 354, § 255; Collins v. Inhabitants of Dorchester, 6 Cush. 396; Bloor v. Town of Delafield, 34 N. W. 115, 69 Wis. 273; Phillips v. Town of Willow, 34 N. W. 731, 70 Wis. 6; Parker v. Publishing Co., 69 Me. 173; Early v. Railway Co., 33 N. W. 813, 66 Mich. 349; Railway Co. v. Wynant, 17 N. E. 118, 114 Ind. 525; Edwards v. Navigation Co., 39 U. C. Q. B. 264.

III. The testimony of Mr. Jenkins that there was a tendency, in the running of an elevator, for machinery to get hot, was incompetent. When asked what was necessary to prevent it, he said that a box might get heated from the fact that a shaft was out of line, or that the oil did not come in contact with the bearings. There was no evidence tending to show that any shaft in the defendant's elevator was out of line, or that there was any bearing which had become clogged up so that the oil did not reach it.

IV. The plaintiffs sued in three counts,—the first, in contract, on the bills of lading; the second, in contract, against the defendant as common carrier and insurer; the third, in tort against the defendant as common carrier, for its negligence, whereby the grain was destroyed. At the close of the plaintiffs' case, they elected to withdraw the first and second counts and stand on the third. Subsequently, the defendant moved that the plaintiffs could not proceed against the defendant upon its common-law liability as a common carrier, as they were attempting to do by electing to proceed upon the third count in the declaration, but must recover, if at all, upon the contract as determined by the bill of lading, and, therefore, that the court should order a verdict for the defendant. This motion the learned judge overruled.

By the issuance of the bill of lading by the defendant, and by the acceptance thereof by the plaintiffs, a new contractual relation was created, entirely replacing that of common carrier and shipper or consignee. The case was thereupon taken out of the class of common carriers, and carried into one of the numerous classes of special bailment, and was henceforth governed by the law of the latter. The common law defines the duty and liability in the former class. In the latter, the parties themselves make their own special laws governing that particular contract, and are bound thereby. York Co. v. Illinois Cent. R. Co., 3 Wall. 107; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 9 Sup. Ct. 469, 129 U. S. 397; Farnham v. Railroad Co., 55 Pa. St. 53.

The special contract constitutes the only contract or relation between the parties. The plaintiffs are bound by its terms, and the defendant is entitled to the relief that such special contract gives. Squire v. Railroad Co., 98 Mass. 239; Grace v. Adams, 100 Mass. 505; Pemberton Co. v. New York Cent. R. Co., 104 Mass. 144; Graves v. Railroad Co., 137 Mass. 33.

No recovery can be had, either in an action against a carrier on any common-law liability for loss of goods which were in fact carried under a special contract limiting liability, (White v. Railway Co., 2 C. B. [N. S.] 7; Latham v. Rutley, 2 Barn. & C. 20; Railway Co. v. Bennett, 89 Ind. 457; Snow v.

Railroad Co., 9 N. E. 702, 109 Ind. 422,) or in an action against a common carrier on a statutory liability for loss of goods carried under a special contract, (Bassett v. Railroad, 13 N. E. 370, 145 Mass. 129.)

The plaintiffs must stand by their election. Clapp v. Campbell, 124 Mass. 50.

V. There was no evidence which justified the submission of the question of negligence to the jury.

While the jury, in all cases, are to say whether the particular inference of fact ought to be drawn from the testimony, it is for the judge to determine, as a preliminary matter, whether that inference can be drawn by a fair and reasonable man. Railway Co. v. Jackson, 3 App. Cas. 193; Pleasants v. Fant, 22 Wall. 121; Randall v. Railroad Co., 3 Sup. Ct. 322, 109 U. S. 478; Ryder v. Wombwell, L. R. 4 Exch. 33.

A warehouseman is bound to exercise only such care as a man of ordinary prudence would use in reference to his own property under similar circumstances. Knapp v. Curtis, 9 Wend. 60; Schmidt v. Blood, Id. 268; Claflin v. Meyer, 75 N. Y. 260; Garside v. Navigation Co., 4 Term R. 581; Ducker v. Barnett, 5 Mo. 97.

The burden is on the plaintiffs to prove negligence. Willett v. Rich, 7 N. E. 776, 142 Mass. 356; Railroad Co. v. Capps, 16 Am. & Eng. R. Cas. 118; Claflin v. Meyer, 75 N. Y. 260.

The plaintiffs must point out with reasonable certainty the particular in which the negligence consists. Daniel v. Railway Co., L. R. 3 C. P. 216; Noble v. Toronto, 46 U. C. Q. B. 519; Wheelan v. Railroad Co., (Iowa,) 52 N. W. 119; Ellison v. Truesdale, 51 N. W. 918, 49 Minn. 240; Draper v. Canal Co., 23 N. E. 131, 118 N. Y. 118.

Not only must the plaintiffs affirmatively show negligence upon the part of the defendant, but they must further prove that this negligence contributed proximately to the injury. Railroad Co. v. Reeves, 10 Wall. 176; Denny v. Railroad Co., 13 Gray, 481; Hoadley v. Transportation Co., 115 Mass. 304; Morrison v. Davis, 20 Pa. St. 171; Whart. Neg. (2d Ed.) § 85; Roberts v. Gurney, 120 Mass. 33; Worthington v. Railroad Co., 23 Atl. 590, 64 Vt. 107; McNally v. Colwell, (Mich.) 52 N. W. 70.

VI. The trial court erred in its rulings and charge as to the effect of the provision as to notice of loss or damage, and as to the time of beginning suit.

A contract for bailment, with special clauses limiting liability, may be made, and is binding upon the parties thereto, provided the clauses limiting liability are reasonable. York Co. v. Illinois Cent. R. Co., 3 Wall. 107; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 9 Sup. Ct. 469, 129 U. S. 397.

A clause in a contract limiting the time within which, for breach of the contract, a claim shall be made or an action shall be brought, is lawful, and often resorted to. Amesbury v. Insurance Co., 6 Gray, 596; Express Co. v. Caldwell, 21 Wall. 264.

A clause limiting the time within which claim is to be made has been held good in cases of forwarding goods: Ninety days, (Express Co. v. Caldwell, ut supra;) seven days, (Lewis v. Railway Co., 5 Hurl. & N. 867;) three days, (Moore v. Railway Co., L. R. 10 Ir. 95;) in cases of delivery of telegrams, (Wolf v. Telegraph Co., 62 Pa. St. 83;) and of insurance, (Riddlesbarger v. Insurance Co., 7 Wall. 386; Fullam v. Insurance Co., 7 Gray, 61.)

A clause limiting the time within which an action shall be brought has been held good in a great number of insurance cases. See Amesbury v. Insurance Co., ut supra.

The same reasoning is applicable to a special contract of bailment. Amesbury v. Insurance Co., ut supra; Cray v. Insurance Co., 1 Blatchf. 280; Wood, Lim. (1882) p. 80.

And the courts have sustained clauses limiting the time in which suit shall be brought to sixty days (Thompson v. Railroad Co., 22 Mo. App. 321) and to forty days, (Railway Co. v. Trawick, 4 S. W. 567, 68 Tex. 314.)

VII. Whether or not the clause limiting the time for bringing suit is reasonable, is a question for the court, and not for the jury, to decide. Thompson v. Railroad Co., 22 Mo. App. 321; 2 Thomp. Trials, § 1572.

VIII. The court erred in its instruction as to defendant's duty and liability in case the jury found the fire to have been of incendiary origin.

A warehouseman must take all ordinary and reasonable measures to see

that the goods in his hands are kept reasonably secure from all ordinary risks. He must show such degree of care as a man of ordinary prudence would show. He is responsible for ordinary negligence. Norway Plains Co. v. Boston & M. R. Co., 1 Gray, 263, and cases cited ante, V.

The jury should have been instructed that the defendant was obliged to show only such diligence and precaution as the exigencies of the particular service in question reasonably required, and that the defendant was not obliged to guard against unforeseen and unprecedented occurrences. Railroad Co. v. Reeves, 10 Wall. 176; Denny v. Railroad Co., 13 Gray, 481; Hoadley v. Transportation Co., 115 Mass. 304; Searle v. Laverick, L. R. 9 Q. B. 122; Lancaster Mills v. Merchants' Cotton-Press Co., 14 S. W. 317, 89 Tenn. 1; Norris v. Railway Co., (Fla.) 1 South. 475; Cowles v. Pointer, 26 Miss. 253.

Robert M. Morse, (William M. Richardson and Charles E. Hellier, on the brief,) for defendants in error.

I. Linton's testimony was properly admitted.

The record states that his testimony was admitted upon the understanding that plaintiffs would show that the condition of things at the foot of the lofting leg was the same at the time of the fire as in 1887. Defendant made no motion to strike out Linton's testimony for want of such evidence, and the exceptions do not state or imply that the testimony is now objected to upon that ground. Therefore, it is not open to defendant to maintain that the evidence is inadmissible upon that ground.

The testimony is admissible as showing, and affecting the defendant with knowledge of, a dangerous condition of things at the particular place and as showing the possibility or probability of fire from the causes described. Railroad Co. v. Richardson, 91 U. S. 454; Piggot v. Railway Co., 3 Man. G. & S. 229; Sheldon v. Railroad Co., 14 N. Y. 218; Field v. Railroad Co., 32 N. Y. 339; Webb v. Railroad Co., 49 N. Y. 420; Cleaveland v. Railway Co., 42 Vt. 449; Railroad Co. v. McClelland, 42 Ill. 358; Smith v. Railroad Co., 10 R. I. 22; Longabaugh v. Railroad Co., 9 Nev. 271. See, also, Standish v. Washburn, 21 Pick. 237; Todd v. Rowley, 8 Allen, 51.

II. The testimony of O'Connor was properly admitted for the same reasons.

III. The testimony of Jenkins that bearings might in several ways become sufficiently heated to ignite grain dust was properly admitted as expert testimony, in connection with the testimony of Linton and O'Connor that at several times before the fire the bearings had become sufficiently heated so as to ignite the dust, as also in connection with the testimony in the case that the fire, when first seen, was at the foot of the lofting leg near the bearings.

IV. It was rightly ruled that plaintiffs might proceed under the count in tort.

The existence of a written contract does not estop the plaintiff from suing in tort for negligence. The remedy in tort and the remedy upon the contract are coexistent, and plaintiff may elect which he will pursue. School Dist. in Medfield v. Boston, H. & E. R. Co., 102 Mass. 552.

By the Massachusetts practice act, (Pub. St. c. 167, § 2, subd. 5,) a count in tort and a count in contract may be inserted in the same declaration, when both counts are for the same cause of action. Thus, a count in tort, for the conversion of goods, may be joined with a count for breach of a contract to hold the goods until plaintiff's lien was paid. New Haven & N. Co. v. Campbell, 128 Mass. 104; Cunningham v. Hall, 7 Gray, 559.

V. There was evidence for the jury of negligence upon the part of the defendant.

The only question that the court will consider is whether there was any evidence upon which the jury might properly find a verdict for the plaintiff. The court will not pass on the weight of the evidence. Robbins v. Potter, 98 Mass. 532; Forsyth v. Hooper, 11 Allen, 419; Hillyer v. Dickinson, 28 N. E. 905, 154 Mass. 502.

There can be no question that under the decision in Railroad Co. v. Richardson, supra, there was evidence from which the jury might find that the defendant was negligent, and that its negligence caused, or contributed to produce, the loss.

VI. It is a well-recognized principle that a carrier's exemption from liability must include such grounds only as are just and reasonable, in contemplation of law. Railroad v. Lockwood, 17 Wall. 357; Judson v. Railroad Corp., 6 Allen, 486; Squire v. Railroad Co., 98 Mass. 239; Grace v. Adams, 100 Mass. 505; Pemberton Co. v. New York Cent. R. Co., 104 Mass. 144; Hoadley v. Transportation Co., 115 Mass. 304; Bank of Kentucky v. Adams Exp. Co., 93 U. S. 174; Peek v. Railway Co., 10 H. L. Cas. 478, 493; Express Co. v. Caldwell, 21 Wall. 264.

Whether or not a condition is reasonable is a question for the court to determine, and in each case depends upon the peculiar circumstances of the case. Railroad Co. v. Lockwood, 17 Wall., at pages 380, 381.

In Bank of Kentucky v. Adams Exp. Co., supra, a condition that the carrier would not be liable for loss by fire on connecting lines was held unreasonable. In Railroad Co. v. Lockwood, supra, so held in regard to a stipulation for exemption from responsibility for negligence of defendant's servants. In Express Co. v. Caldwell, 21 Wall. 264, an agreement was made between the express company and the plaintiff that the company should not be liable in case of loss unless claim should be made within 90 days from delivery of the property to the express company. The court upheld the reasonableness of this condition, but said, (page 271:) "Possibly, such a condition might be regarded as unreasonable, if an insufficient time was allowed for the shipper to learn whether the carrier's contract had been performed. But that cannot be claimed here. The transit required only one day."

In the present case, the condition that written claim must be made within 30 days after loss to the party sought to be made liable was unreasonable, as will be seen by applying it to the facts of the case.

But, should the condition be considered to be reasonable, it cannot be set up in defense to this action, because not specially pleaded, and evidence thereof cannot be given under the answer. School Dist. in Medfield v. Boston, H. & E. R. Co., supra; Westcott v. Fargo, 61 N. Y. 542.

The condition is a condition subsequent, and performance thereof need not be alleged in the declaration. Newcomb v. Brackett, 16 Mass., at page 166.

The statute of limitations must be specially pleaded. Pond v. Gibson, 5 Allen, 19; Emmons v. Hayward, 11 Cush. 48.

VII. The condition that suit must be brought within 90 days after loss is unreasonable, for the same causes as the condition requiring claim to be made within 30 days.

It is true that, in suits upon fire insurance policies, conditions therein limiting the time within which suit must be brought have been held valid. Riddlesbarger v. Insurance Co., 7 Wall. 386; Amesbury v. Insurance Co., 6 Gray, 603. Also, in the case of telegraph companies. Wolf v. Telegraph Co., 62 Pa. St. 83. But such cases are easily distinguishable from the present. In the former, the mere proof of loss makes a prima facie case against a defendant, and any defense thereto rests solely upon facts wholly within knowledge of the plaintiff. No reason exists, therefore, why suit should not be begun within a stipulated period, nor why such a stipulation should not be considered reasonable and valid. In the present case, however, the plaintiffs cannot recover without showing negligence on the part of defendant. The burden of proof is upon the plaintiffs. The facts are, from their nature, solely within defendant's knowledge. To hold, therefore, that a limitation of time shall run against a plaintiff whose property has been intrusted to defendant, has been destroyed while in defendant's possession; who has no knowledge of the causes of loss; who exercises reasonable diligence to ascertain the causes; whose acts in no respect have contributed to produce the loss, except in making the mistake of intrusting his property to defendant,—is utterly wrong, and a great injustice.

VIII. The direction of the court that defendant must exercise reasonable care to protect property in its hands from all hazards was proper. Aldrich v. Railroad Co., 100 Mass. 31; Barron v. Eldredge, Id. 455.

And also the further instruction that defendant was liable if the fire was caused or permitted by its failure to provide suitable or sufficient watchmen. Vincent v. Rather, 31 Tex. 77; Hamilton v. Elstner, 24 La. Ann. 455; Chenowith v. Dickinson, 8 B. Mon. 156; Clarke v. Earnshaw, Gow, 30; Deposit Co. v. Pollock, 85 Pa. St. 391.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. This suit was brought against the Central Vermont Railroad Company, which was not only a common carrier from Ogdensburg towards Boston, but also proprietor of elevators at Ogdensburg, in one of which the grain of plaintiffs below was destroyed by fire, the elevator also being totally consumed. The grain was shipped August 11, 1890, at Chicago, on the barges or steamers of the Ogdensburg Transit Company, stated in the bills of lading to be bound for Ogdensburg, and there, according to the bills of lading, to be delivered to the next carrier for forwarding to the place of final destination. The bills of lading showed that the grain was consigned to the order of the plaintiffs, and specified the through rate of freight from Chicago to Boston. They also had indorsed across the face: "Hold at Ogdensburg for orders." They also provided that "these companies" (meaning any company or carrier concerned in the transportation from Chicago to Boston) should not be responsible as common carriers for the grain "while at any of their stations awaiting delivery" to the consignee or the next carrier; adding, further, that while so awaiting the companies were liable as warehousemen only. Accordingly, the grain was forwarded, water-borne, to Ogdensburg, and there warehoused in one of the elevators of the defendant below. When it was destroyed, it was there awaiting further orders from the plaintiffs below, as provided in the memorandum written across the face of the bills of lading. The bills of lading also provided that, among other charges and liens on the property, was the "expense of storage." So that, while the case does not show, specifically, that the defendant below was to receive elevator charges, yet this may be inferred from this expression. Certainly, no point was made by defendant below to the contrary. So that the liability at the time the grain was destroyed was as warehouseman, and as warehouseman only.

Certain questions of pleading arise in the case which we feel bound to state, but which, on the exceptions, will be found to be unimportant on this appeal. Under the Massachusetts practice acts, the plaintiffs below combined in their declaration two classes of counts,—one on the bills of lading, or on the agreements contained in them, taking the place of assumpsit at common law, and the other in tort, based on the common-law liability of carriers and warehousemen, and corresponding to the common-law action on the case for negligence. An objection was taken by the bill of exceptions that counts of the latter class are not sustainable. But the common law permitted actions against carriers and warehousemen for the loss of merchandise actually delivered into their possession to be brought either in assumpsit, or in case for negligence, at the option of the owner of the merchandise. This is so clearly settled that it needs no explanation here. The principles on which this option was based were undoubtedly carried into the practice acts of Massachusetts with only this qualifica-

tion: That, under those acts, counts in tort and for breaches of contract may be united in one declaration. Therefore, the propositions for the defendant below in this behalf do not meet the approval of the court.

It is said in the bill of exceptions that at the trial the plaintiffs below elected to proceed on the third count alone. This count, as well as all the other counts in the declaration, was framed against the defendant below as a common carrier, while, clearly, its liability, if it exists, is as a warehouseman,—a substantial variance, which, however, was waived, so far as this bill of exceptions is concerned, and is of importance here only with reference to a matter which will be next referred to.

One of the main branches of defense is based on a provision in the bills of lading that no action should be sustained for loss or damage unless a claim therefor was made within a time specified, and a suit brought within another time specified. On this appeal, plaintiffs below maintain that this defense cannot be availed of, because it was not set up in the answer. On general rules of pleading, inasmuch as it was not necessary for the plaintiffs below to set out this provision, as it is in the nature of condition subsequent, it would seem that a mere denial of the allegations of the declaration would not raise the issue which the defendant below has raised on this part of the case, and that, therefore, if the defendant below relied upon it, it should have been specially pleaded. However, the parties have not called our attention to any decision bearing directly on this question as it arises under the practice acts of the state, and it is not necessary that we should determine it.

Federal courts justly seize upon slight circumstances for establishing a waiver of defects or errors appearing in the pleadings or in the course of a trial, which might be remedied if objection was seasonably taken, and they ordinarily hold that such waiver is implied from the mere fact that no objection is taken. If the answer was insufficient, on objection being taken the insufficiency could have at once been removed by an amendment; and if the plaintiffs below permitted the defendant below to urge in that court this defense, which is the principal one set up in the cause, without then raising any question of pleadings, the mere silence of the plaintiffs below was a sufficient waiver in this behalf. The exceptions show that the learned judge of the circuit court submitted this question to the jury; thus indicating either that no objection was taken on the score of a defective answer, or that, if any was taken, it was overruled by him. In the absence of any statement touching this matter in the bill of exceptions, it is impossible for this court to determine which of these two contingencies existed in the court below; and, as the rulings of that court are presumed to be correct in all matters not shown by the bill of exceptions, it was the duty of the plaintiffs below, if they raised this question at the trial, and there insisted upon it, to have had that fact appear in the bill. In the absence of anything expressly to the contrary, this court

must assume that any objection of that character was waived, upon the same grounds and for the same reasons that it must assume that the variance between the third count, charging the defendant below as common carrier, and the proofs, showing its liability to be that of warehouseman, was also waived.

Although the conclusions which we reach do not necessarily require us to notice the exceptions touching the admissibility of evidence, nevertheless, as the case must go back for a new trial, and the same evidence will probably again be offered, it seems advisable that we should express our views concerning them. First of all, we desire to say that, although the bill of exceptions assumes to make all the evidence and proceedings in the court below a part of it, yet, whatever we might do in the case of a substantial error, clearly contrary to the law and justice of the case, we cannot be required to look outside of the bill with reference to any question, except the request of the defendant below that the court should instruct the jury to return a verdict in its favor on the whole evidence. The authorities sustaining this proposition will be found summed up in an opinion of the circuit court of appeals for the fourth circuit in Improvement Co. v. Frari, 58 Fed. 171.[1] And, if we did thus look into the record at large, we might find that there was no question touching the admissibility of evidence requiring our attention, because all such questions were raised by mere objections, without assigning the grounds for the objections, and therefore without furnishing the basis of exceptions. Authorities on this well-settled point are referred to in the opinion of the circuit court of appeals for the eighth circuit in U. S. v. Shapleigh, 4 C. C. A. 237, 54 Fed. 126, 137.

It is not impossible that the testimony which we have to consider, was inadmissible, or should have been stricken out, in a certain view of it not presented by the bill of exceptions, although there suggested, with reference to the evidence of Linton. This testimony relates to the bearings at the foot of the lofting leg. It was claimed by the defendant below that there was no evidence that the fire originated at that point. It is frequently the right and the duty of the trial court to admit evidence which, when admitted, is not apparently relevant, upon the assurance of counsel that it will afterwards be connected. This relates to the order of a trial, but it does not deprive the party against whom the evidence is offered of his just rights with reference to it. He may object to it on the ground of irrelevancy at the time it is offered, and, if not afterwards connected, move to have it stricken out; and, if not stricken out, he, by thus seasonably objecting at the outset, and seasonably renewing his objection, secures to himself a legal right to exceptions. It may be that all this testimony came in under such circumstances; so that, if there was no evidence at the close of the plaintiffs' case connecting the fire with the foot of the lofting leg, the defendant below, having seasonably objected when the evidence was offered, and possibly with-

[1] 7 C. C. A. 149.

out doing so, was, perhaps, for the reasons stated, entitled, on renewing objections, to have it stricken out. With reference to the testimony of Linton, the bill of exceptions states that his evidence was admitted upon the understanding that the plaintiffs below would prove that the condition of things at the foot of the lofting leg, at the time of the fire, was substantially the same as it was at the time with reference to which the witness testified, but there is nothing in the bill showing that the defendant below subsequently called the attention of the court to it anew; so that this statement in the bill is wholly ineffectual. Therefore, on the face of the bill, all the objections to the testimony ruled in relate entirely to its quality; and in no particular to its relevancy in connection with other evidence as to the place where the fire originated.

Those portions of the evidence of Linton and Jenkins which were objected to relate entirely to the tendency of things,—inanimate objects,—being, in this case, the machinery. The plaintiff in error has argued as though they related to the peculiar habits of certain specified human beings. The distinction is a broad one; and, if it is kept in mind, the evidence was clearly admissible, for the purpose, not of showing that the employes of the defendant below were negligent, but of showing facts, some of which the jury might, perhaps, have assumed without evidence, namely, that it is the tendency of certain parts of rapidly-running machinery to get heated, and of dust in mills where grain is ground or stored to be of a highly inflammable character. These facts might have been properly brought to the attention of the jury, both for the purpose of showing a point where the fire might have originated, and also of showing the necessity of care to guard that point. Maguire v. Railroad Co., 115 Mass. 239, cited by the plaintiff in error, which related to the negligent acts on other occasions of the defendant's driver, for whose unskilfulness he was sued, is not in point. The fact that the tendency to get heated, and the inflammable character of the dust, were explained by witnesses, even if the jury might have assumed a part thereof as true without proof, cannot prejudice either party.

The testimony of O'Connor, objected to, goes a little further. He stated, in substance, that he had known of instances when the bearings at the foot of the lofting leg became heated, and that he had also known the dust to become ignited at this point. This evidence is clearly within the rule established in Railroad Co. v. Richardson, 91 U. S. 454, and in the other cases referred to in Railway Co. v. Johnson, 10 U. S. App. 629, 4 C. C. A. 447, 54 Fed. 474.

The defendant below also excepted to certain rulings of the learned judge of the circuit court with reference to its duty as to guarding against fires of incendiary origin; and it now claims that the learned judge, in instructing the jury with reference to this matter, should have ruled that it was obliged to show only such diligence and precaution as the exigencies of the particular service in question reasonably required, and was not obliged to

guard against unforeseen and unprecedented occurrences. It seems to us that the instruction of the court objected to was strictly in accordance with the law, yet, notwithstanding this, the way in which some expressions in it were emphasized might possibly have misled the jury; and, probably, if the learned judge had been requested to instruct additionally in the language which the plaintiff in error now insists upon, he might properly have done so. It does not appear, however, from the bill of exceptions, that the defendant below objected to any specific expressions, or asked the court to give any additional instructions; and as the rulings were strictly in accordance with law, as already stated, the exception on this point cannot be sustained, in the absence of something more specific than the record presents.

The most important question in this case turns on the following language in the bills of lading: "The said company" (meaning the Ogdensburg Transit Company, whose part of the transit was water-borne from Chicago to Ogdensburg) "shall not, nor shall any carrier, person, or party aforesaid," (meaning "any carrier or any person or party in possession of" the grain during its transit from Chicago to Boston,) "be liable, in any case or event, unless written claim for the loss or damage shall be made to the person or party sought to be made liable within thirty days, and the action in which said claim shall be sought to be enforced shall be brought within three months after said loss or damage occurs."

It is now settled that such questions appertain to the domain of general law, and that in determining them the federal courts are not bound by the decisions of the courts of the states in which the contracts were made, or by other local decisions. We have not been referred to, nor have we found, any decisions touching this subject-matter, which are binding on us, except Riddlesbarger v. Insurance Co., 7 Wall. 386, and Express Co v. Caldwell, 21 Wall. 264. Nor, except upon the proposition that provisions of this kind are not necessarily contrary to public policy, have the decisions of the courts, either in the United States or England, become sufficiently settled to afford us any satisfactory guide. They are very contradictory and inconsistent, as will be seen by turning to the mass of them cited in Wheeler on the Modern Law of Carriers (page 123,) and in Hutchinson on Carriers, (2d Ed., § 259.)

The fundamental proposition that parties exercising the quasi public functions of common carriers cannot, at their pleasure, impose conditions beyond those which the law imposes, is too well settled to need elaboration, resting, as it does, both upon general grounds of public policy, and upon the fact that a shipper of merchandise does not ordinarily stand on an equal footing with the carrier. Yet it must be confessed that where bills of lading are in printed form like those at bar, and therefore apparently in common use, and no suggestion is made that they are not in such use, and no suggestion that there has been any public or private complaint touching them, although, on account of their general use, the stipulations must be well known to ordinary shippers, this court should be well satisfied, before hold-

ing that clauses as to which there has been no line of decisions by other courts, or of expressions by the text writers, are unreasonable, and therefore void.

We must take this provision in its consolidated form. As such, it relates, not only to such portion of the transit as is carriage at common law, but also to such portion as is warehousing. If the provision had been limited to the latter, the position might be different; but, as it stands, we must test it with reference to the former. So, also, it covers, not only damage, but loss. If it had been limited to damage, and this with reference to the time when the damage was ascertained, or when the merchandise came into the hands of the consignee, it might all be valid, on the same principle on which, in many jurisdictions, it is held a reasonable state of the law to require that a person claiming a warranty cannot, after receipt and opportunity to inspect the merchandise purchased, set up a breach on account of what was patent, or what might have been discovered. But in the case at bar the provision relates, not only to damage ascertainable on the arrival of the goods, but also to damage wherever occurring, and to loss wherever occurring. The court cannot fail to take judicial knowledge of the fact that on bills of lading like these, with a right to hold at Ogdensburg for orders, the entire transit may not unreasonably consume the whole of 30 days. As the damage, or even the loss of part, might be in the early stages of the transit, it is not unreasonable to suppose that it might well happen, in many ordinary cases, that the loss or damage will fail to even come to the knowledge of the consignee within the short period named for giving notice of his claim. Moreover, the delay involved in correspondence touching occurrences over so long a transit, coupled with the unreasonableness of requiring that in the event of loss or damage the consignee should at once go upon the route, in lieu of availing himself of the usual methods by mail, must in many cases, in the ordinary course, be so great as to enable the court to assume that the time named would not ordinarily give reasonable opportunity for investigation, so far as to enable consignees to state properly a written claim, or even to know against whom the claim should be made. Express Co. v. Caldwell, ubi supra, does not directly aid the court on this point, because there the carriage covered ordinarily but a single day, and the time allowed for giving the notice was 90 days from delivery to the express company; but the line of argument in that case is impliedly against the reasonableness of the period of 30 days allowed in the case at bar.

On the whole, without attempting to balance the conflicting decisions relative to matters of this sort, which would be of no advantage, especially as the circumstances are so apt to differ, the court is satisfied that, in view of the consolidated form of this provision, the portion of it, which requires a written claim for loss or damage to be made within 30 days after the loss or damage occurs, covering a transit which may be expected to be so long as this one may be, is so liable to defeat valid claims,

notwithstanding the best of diligence and good faith on the part of the consignees, that it must be held void. The ruling of the court below in this particular was correct, but the other limitation of three months contained in the same bills of lading cannot be so clearly criticised.

Riddlesbarger v. Insurance Co., 7 Wall. 386, already cited, is directly in point that the limitation of the time of suit to three months, contained in these bills of lading, is not invalid on the mere ground that it contravenes the statute of limitations; and this case, with Express Co. v. Caldwell, 21 Wall. 264, already cited, seems to be sufficient to justify the court in holding that this limitation is not invalid, provided it is not in its nature unreasonable. Neither of these decisions, however, nor any other which binds this court, goes further than this in aiding this court in the case at bar. Parties having agreed to this provision without protest, and, as already said, the bills of lading being apparently in common and public use, with apparent general acquiescence, it would seem to rest on the court to sustain the provision, unless it find it unreasonable; and such is the state of the law, in any event.

On the whole, the court concludes that there have not been brought to its attention, on the record, as it now stands, sufficient considerations to enable the court to pronounce unreasonable the limitation of three months now in question, although the limit of time is sufficiently short to bring it within the field of doubt, and to leave its solution to stand upon the fact that the presumption is in its favor, unless the court is satisfied that it ought to be held void. The court does not deem it proper to go beyond that general statement at present, or to enter into detailed discussion, as the case must go back for a new trial, and it is possible that the question may come before the court again with considerations and circumstances somewhat modified.

So far this court agrees with the learned judge who presided at the trial; but, perhaps for the purpose of raising the question, he gave the plaintiffs below the benefit of an exception to this stipulation as stated in the bills of lading, in the following form:

"My instruction is that this limitation is binding upon the plaintiffs, and they will be bound to pursue their remedy within ninety days, provided they had full knowledge of the cause of the fire."

Then comes another sentence, in which the learned judge gave the plaintiffs the benefit of the circumstances of their not being "wanting in the exercise of reasonable diligence to ascertain the situation," and then the following:

"But if you should find that the plaintiffs had full knowledge, within the ninety-days period, of the cause of the fire, or if, by the exercise of reasonable diligence, they could have discovered the cause, then they cannot recover, as their suit should have been brought within that period."

Then comes an instruction that the burden of proof on this proposition rests on the plaintiffs below, which was correct.

We do not consider, nor is it necessary for us to consider, whether there is any evidence in the cause touching the knowl-

edge which the consignees had, or touching their exercise of reasonable diligence to ascertain, concerning the loss, which justified the submission to the jury of the issues covered by the instructions now under consideration, because we are not satisfied that any such exception as these instructions imply can be raised, under any circumstances which have been brought to our attention. To incorporate this exception, or any exception whatever, is to go beyond the letter of the contract, and put into the mouths of the parties words which they themselves have not used. There are circumstances under which this may be done by necessary implication; but they are of an extreme character, such as the intervention of war prohibiting a suit by one party against the other, or an injunction from some court accomplishing the same prohibition, or the absconding or absence of the party against whom the claim is to be made. Very likely an exception would arise, if there was an entire lack of knowledge on the part of the consignee, during the entire period of limitation, of the existence of any loss or damage, when coupled with a lack of circumstances imposing the duty of making inquiry, or for so much of the period as practically bars investigation during what remains of it, even with the utmost diligence. We do not undertake to define accurately all the possible exceptions, or to hold that there are not others, as it is not now necessary that we should; but the exception made at the trial does not grow out of matter of an extraordinary character, arising from the necessity of things, like those which we have instanced. It involves only circumstances transpiring in the ordinary course of transactions, and which, therefore, must be assumed to have been anticipated and met by the express stipulation which the parties have agreed on. We are therefore of the opinion that, as the case stands, the plaintiff in error must prevail on its exception to the refusal of the learned judge to direct a verdict for it on the ground that it appeared that the plaintiffs below did not bring their action for the loss within three months after it occurred.

Judgment reversed. New trial ordered.