CENTRAL VERMONT R. CO. v. RUGGLES et al

(Circuit Court of Appeals, First Circuit. August 19, 1896.)

No. 174.

1. **REVIEW ON APPEAL—FALSE ISSUE—ACQUIESCENCE.**

In an action for the burning of grain in defendant's elevator there was presented to the jury, without objection, the issue of "reasonable care in selecting and keeping competent and reasonably careful agents to take charge of the building and machinery," and the jury were told that "the defendant would not be liable, provided it furnished reasonably careful watchmen and other reasonable protection"; and the defendant excepted to "the submission of the question whether the defendant employed a number of suitable watchmen," not because that question failed to present the true legal issue, but because "there was no evidence" justifying its submission. *Held,* that the issue of the general competency of defendant's watchmen, though a false issue, was presented with defendant's acquiescence, so that the reception of evidence thereunder was not cause for reversal, although the evidence would not have been admissible, if the case had been tried on its proper legal issues.

2. **NEGLIGENCE OF WAREHOUSEMAN—FIRE—EVIDENCE.**

In an action for the burning of grain in defendant's elevator there was evidence of lack of such attention on the part of defendant's watchman as might have enabled him to check the fire if he had been vigilant, and one witness testified that the bearings at the foot of the lofting-leg, where the fire was claimed to have originated, were hot all the preceding day; that he smelled burning oil that day; and that the dust had accumulated around the foot of the lofting leg, and had not been cleaned away for several days. Defendant failed to explain the origin of the fire, suggesting that it was incendiary, but offering no evidence to that effect. *Held,* that the question of defendant's negligence was for the jury.

3. **EVIDENCE—ORIGIN OF FIRE.**

On an issue charging the origin of a fire in an elevator to negligence, evidence that three years before, through the inattention of the persons having charge of oiling the machinery, the pipes through which the oil passed became choked with dust, is inadmissible; but its admission in the case at bar affords no ground for a new trial because the objections to it were not definitely stated in the court below.

In Error to the Circuit Court of the United States for the District of Massachusetts.

Chas. A. Prouty, for plaintiff in error.

Robert M. Morse and Wm. M. Richardson, for defendants in error.

Before COLT and PUTNAM, Circuit Judges, and NELSON, District Judge.

PUTNAM, Circuit Judge. This action was for the value of certain grain belonging to the plaintiffs below, now the defendants in error, which was consumed by fire in and with an elevator of the defendant below, now the plaintiff in error, situated at Ogdensburg. The only count relied on at the trial was one charging liability as warehouseman. This is styled a count in tort, but it really alleges a breach of contract. It does not point out the particulars of the breach, and alleges negligence only in general terms. In any view, the law is so well settled as to the degree of care imposed on the defendant below, and the burden of proof resting on the plaintiffs below, that it need not be stated.

The alleged errors 1 and 2 will be considered later. Those numbered 3 and 4, in connection with 5, relate to certain evidence tending to show that the watchman employed by the defendant below was of intemperate habits. The objections to the evidence, as stated, were in part remoteness in the matter of time, and in part "incompetency of testimony," to repeat the expression which was used by counsel at the time of objecting. The bill of exceptions states that one ground of negligence claimed at the trial by the plaintiffs below was the unsuitableness of the watchman, and that the evidence now under discussion was offered as bearing on this issue. But the question was not the general incompetency of the watchman, or his general habits. That issue might have been one step in a series of issues, if the action had been by an employé against his employer for negligently retaining an incompetent co-employé. The only question in this case was whether the watchman did his duty on the night of the fire. He might have been the most incompetent watchman, and have done it, and he might have been the most competent watchman and have failed to do it; so that, if the case had stood on the law, the evidence was inadmissible. The only way in which such evidence properly comes in was stated by Judge Taft, in his opinion in behalf of the circuit court of appeals for the Sixth circuit in Railroad Co. v. Henthorne, 19 C. C. A. 627, 73 Fed. 634, 637, in the following language:

"The defendant complains of the action of the court below in permitting evidence of the general reputation of Harrison for drunkenness, and consequent incompetency as an engineer. It should be premised that this was accompanied by evidence that Harrison's drunken condition was the cause of the accident, and by further evidence that Harrison was in the habit of getting drunk. It was entirely competent to show Harrison's general reputation for the purpose of showing that the defendant was negligent in retaining him in its employ."

Thus, even in the case of an employé charging that a co-employé was unsuitable, the court indicated that evidence of the character

of that at bar must be accompanied by proof that the co-employé was in a drunken condition at the time of the accident, and that his condition was the cause of the accident. But we must take notice of the fact that one issue presented to the jury in the case at bar was that of "reasonable care in selecting and keeping competent and reasonably careful agents to take charge of the building and machinery." The court said to the jury that, if the fire was the result of incendiarism, "the defendant would not be liable, provided it furnished reasonably careful watchmen and other reasonable protection." Putting the whole record together, it seems plain that one issue submitted was that raised by the plaintiffs below when they offered this evidence, namely, the general competency of the watchman.

Referring again to the form of the objections to the admission of this testimony, as stated in the record, it illustrates the propriety of the rule in the federal courts to the effect that parties desiring to reserve exceptions in connection with such objections should state specifically and clearly the grounds thereof. In this case, if the defendant below had so stated its objections as to have brought to the attention of the court the proper issue, this evidence would clearly have appeared incompetent, and would probably have been ruled out. Apparently the defendant below acquiesced in the presentation of the issues to the jury as they were in fact presented, because, as we have seen, no specific objection was taken on that score. Moreover, the defendant below excepted to "the submission of the question whether the defendant employed a number of suitable watchmen," not because that question failed to present the true legal issue, but, as expressly stated in the bill of exceptions, "for the reason that there was no evidence in the case which justified the submission of that issue to the jury." It is true that, by the requests for instructions, the court was asked to charge the jury that they could not find the defendant below liable for negligence "on account of any alleged incompetency of the watchman, in that there was no evidence that the fire was caused by any act or failure to act on the part of the watchman"; but this, inasmuch as there was evidence of such failure to act, so far from shutting out evidence touching general incompetency, invited it. The evidence objected to was clearly admissible in that aspect. It is not for us to frame the issues to be tried in the court below. The parties there may ordinarily frame them as they see fit; and, if both parties consent, either expressly or tacitly, to the case being tried on a false issue, evidence appropriate thereto cannot be rejected by us because the question thus tried was outside of the law.

The alleged error 7 relates to a single request for instructions which contains seven different subject-matters, some of them clearly bad. It is needless to say that, on well-settled rules of practice, no such request requires any attention from us, unless, perhaps, in some exceptional cases, where there are clear and substantial errors.

The alleged error 9 is treated on the brief of the plaintiff in error with entire disregard of paragraph 2 of our rule 24, and therefore in such way as would require us to look through the whole record

for the purpose of searching out the subject-matter affecting its validity. This, of course, the court will refuse to do.

The alleged error 6 is assigned in the following language:.

"In overruling the defendant's motion for a verdict, upon the ground that there was no evidence of neglect for the jury."

This relates to a request as follows:

"At the close of the testimony the defendant moved the court to direct a verdict in its favor, for the reason that there was no evidence of negligence upon the part of the defendant upon which the jury could find a verdict for the plaintiffs."

This is altogether too broad, because there was evidence of neglect,—if not with reference to causing the fire, yet of lack of such attention on the part of the watchman as might have enabled him to have checked it at its origin if he had been vigilant. Moreover, one witness testified that the bearings at the foot of the lofting-leg, where it was claimed the fire originated, were hot all the day preceding the fire, that he smelled burning oil that day, and that the dust had accumulated around the foot of the lofting-leg, and had not been cleaned away for several days. The plaintiff in error failed to explain the origin of the fire. It suggested that it was through incendiarism, but it offered no evidence tending to sustain that proposition. It was unable or unwilling to suggest any theory of its own. We think, therefore, the jury were entitled, under all the circumstances, to solve the question, and that the court was right in not taking it from them.

We now come back to the alleged errors 1 and 2, relating to the admission of evidence that the bearings at the foot of the lofting-leg had, on previous occasions, become heated, and had on one occasion ignited dust at that point. The first relates to O'Connor's testimony that he had known of the hot bearings setting fire to the dust about them, with a further statement by him that "it might have been a month before the fire." That evidence of this character may be admissible under some circumstances was settled in Railway Co. v. Richardson, 91 U. S. 454, and was explained by us in Railroad Co. v. Soper, 8 C. C. A. 341, 59 Fed. 879. Therefore, clearly, in order to base an exception to the admission of this evidence, the well-settled practice with reference thereto should have been complied with. The question having been put, the following appears: "Objection. Question allowed. Exception." Then the question was answered. It is useless for us to keep repeating in our opinions that objections taken in this way are of no value, except under extraordinary circumstances. Therefore we dismiss from further consideration the testimony of O'Connor.

With reference to the testimony of Linton, covered by the second alleged error, the defendant below, at the close of all the evidence, moved to strike it out, thus meeting a suggestion made by us with reference to the proper method of practice in Railroad Co. v. Soper, already referred to, at page 889, 59 Fed., and at page 352, 8 C. C. A. The question which raises this alleged error was first put, and not answered, and, after some discussion between the counsel and the court, was again put under the following circumstances:

"Q. Then, if you understand the question, will you state whether or not, with the machinery running, there is a tendency of the bearing at the foot of the lofting leg to become heated? A. Yes, sir. Q. And what is the cause of that? A. Of course, I suppose the velocity with which it is run, and I suppose want of oil and attention. The Court: Did I understand you to say inattention? A. With inattention this becomes stopped up. It requires frequent attention. The Court: Stopped with what? A. Dust. Q. What do you mean by this? A. Where the oil went on. Q. The pipes? A. The pipes. Q. The pipes got stopped with dust? A. Yes. Mr. Prouty: I ask to have his answers in regard to inattention and the pipes getting stopped up stricken out. Mr. Morse: I simply want to show that, in the operation of this elevator, it was a common thing for those bearings to become heated, and that that condition of things continued during Mr. Linton's time and after. It bears on the question of notice to this defendant of the condition of things in the elevator. It is not, of course, conclusive proof of the condition at the time of the fire, but it shows the tendency. The Court: I think it is competent for the plaintiff to show that in the ordinary course of business the defendants were aware of that tendency. It is quite remote, but I think it may have a tendency to show how the fire occurred. It may have a tendency to show if the same conditions and the same general course of business existed in 1890. Mr. Prouty: I take exception to the ruling not to strike out those answers. The defendant moved to strike out the foregoing answers of the witness Linton, and excepted to the refusal of the court to comply with said motion, as appears in the foregoing extract from the record."

This involved two subject-matters. The first related merely to the tendency of the bearings to become heated and the inflammable character of the dust. As to these particulars, we said in Railroad Co. v. Soper, at page 890, 59 Fed., and at page 353, 8 C. C. A., as follows:

"The fact that the tendency to get heated and the inflammable character of the dust were explained by witnesses, even if the jury might have assumed a part thereof as true without proof, cannot prejudice either party."

It is difficult to see how any evidence of this character could prejudice or benefit either party. The whole was a matter of common knowledge, and, therefore, presumably it could not prejudice, and the plaintiff in error has not pointed out to us how it could in any way have operated to its injury. Commingled with this, however, there came in another fact, which was of a substantially different character from anything covered by Railroad Co. v. Soper, and Railway Co. v. Richardson. This was that, at the time with reference to which the witness was testifying,—about three years before the fire, —the bearings were oiled through pipes, and that, through inattention, those pipes sometimes became stopped with dust, so that, therefore, the oil would not reach the bearings without the pipes first being cleared. This, however, was brought into the case incidentally, and did not originate from the questions put by the counsel for the plaintiffs below, but from those put by the court. Those put by the plaintiffs related simply to the tendency of the bearings at the foot of the lofting-leg to become heated. As to that, the witness merely stated that there was such tendency, but he did not state that they did so become as a matter of fact. Being asked the causes of this tendency, he assigned two theories, namely, velocity and want of oil and attention. He did not, however, in answer to questions put by the plaintiffs' counsel, state as a fact that there was any want of oil and attention. So far he had only repeated what was of com-

mon knowledge. Then came the first question by the court, "Did I understand you to say inattention?" The witness answered: "With inattention this becomes stopped up. It requires frequent atten-tion." He did not, however, say that it did not receive attention; and to this point he said nothing prejudicial to the defendant below, or which counsel might not have argued, or the jury have assumed, without evidence. The court, however, put the matter further: "Stopped with what? A. Dust." This did not change the aspect of the testimony. Then came the following questions and answers: "Q. What do you mean by this? A. Where the oil went on. Q. The pipes? A. The pipes. Q. The pipes got stopped up with dust? A. Yes." Here first came any evidence that, at the time of which the witness spoke, the bearings did in fact become heated because the pipes, through which only the oil could reach the bearings, were allowed to become stopped with dust. The record does not state by whom these last three questions were asked, whether by the court or by the counsel for the plaintiffs below. We assume the latter. Thereupon the counsel for the defendant below moved that these three answers be stricken out, but he failed to state his reason there-for, and failed, therefore, to lay the foundation for exceptions ac-cording to the general rules touching such matters. Then follow the observations of the counsel and the court, and the exceptions, already set out. Again, at the close of the testimony, the following appears:

"At the close of the testimony the defendant moved to strike out that por-tion of the testimony of the aforesaid witness, Aaron Linton, in regard to the heating of the bearings, and the tendency of the bearings to become heated, the accumulation of dust, and the tendency of dust to accumulate in the elevator in question."

There can be no reasonable doubt that, if the distinction we point out had been properly brought to the attention of the court, the court would have ruled that evidence that, three years before the fire, through inattention of the persons having charge of oiling the machinery, the pipes had become stopped with dust, was inadmissi-ble; and, if it came in inadvertently, as it appears to have done, would have stricken it out. The distinction was plainly pointed out by us in Railroad Co. v. Soper, at page 890, 59 Fed., and at page 353, 8 C. C. A., where it is said as follows:

"Those portions of the evidence of Linton and Jenkins which were objected to relate entirely to the tendency of things, inanimate objects, being in this case the machinery. The plaintiff in error has argued as though they re-lated to the peculiar habits of certain specified human beings. The dis-tinction is a broad one; and, if it is kept in mind, the evidence was clearly admissible, for the purpose, not of showing that the employés of the de-fendant below were negligent, but of showing facts, some of which the jury might perhaps have assumed without evidence, namely, that it is the tend-ency of certain parts of rapidly running machinery to get heated, and of dust in mills where grain is ground, or stored, to be of a highly inflammable character."

The whole record touching the objections to this evidence is ex-tremely confused, and fails to show properly the specific grounds on which the defendant below objected to it. But it is enough that the case fails to show that the distinction to which we refer between

the evidence of the first class and that of the second class was brought to the attention of the court. It was not made by the defendant below when it moved to strike out at the close of the case, according to the citation we have already made. Moreover, it was not brought to our attention at the argument of the case, the proposition then of the plaintiff in error with reference to Linton's testimony being merely as follows:

"If the testimony was admissible at all, it was merely to show that fire might have originated in this manner at that point. Of itself it would not show that it did so originate, and it could only be pertinent in connection with testimony tending to show its origin there. The defendant claims that there was no such evidence, and that, therefore, this testimony was irrelevant, and should have been stricken out."

But we find, as already stated, that there was such evidence; and this proposition is so far from touching on the distinction which we have pointed out between the two different classes of proof that it applies, and was made expressly to apply, in solido, to all those portions of the testimony of Linton and O'Connor to which objections were taken. It seems, therefore, that the only proposition of law which could have required the elimination of any of this testimony was not brought to the attention of the court below by the objections and exceptions; and therefore this alleged error cannot receive consideration.

The remaining alleged errors have not been brought to our attention in such way as to require investigation by us. On the whole, there seems to be nothing in the assignment of errors which would justify us in reversing the judgment of the circuit court. The judgment of the circuit court is affirmed, with the costs of this court for the defendants in error.