## S. SPRAGUE v. MISSOURI PACIFIC RAILWAY COMPANY.

1. COMMON CARRIER; *Limiting Liability.* While a common carrier cannot exonerate himself from liability for his negligence or misfeasance, yet he may, by special agreement fairly made, limit his common-law liability, provided such limitation is reasonable and just, and does not contravene any law or a sound public policy.

2. ———— *Reasonable Agreement.* In an agreement between a railway company and a shipper for the transportation of horses over the railway, there was a stipulation which provided that as a condition precedent to his right to recover damages for any loss or injury to the horses while in transit, the shipper would give notice in writing of his claim therefor to some officer of the said railway company, or its nearest station agent, before the horses were removed from the place of destination, or from the place of delivery to the shipper, and before such horses were mingled with other stock. *Held,* That the agreement is reasonable, and when fairly made is binding upon the parties thereto. (*Goggin v. K. P. Rly. Co.*, 12 Kas. 412.)

### *Error from Cloud District Court.*

ACTION by *Sprague* against *The Railway Company*, to recover $500 damages. Judgment for defendant, at the August Term, 1883. Plaintiff brings the case here. The opinion states the material facts.

*L. J. Crans*, for plaintiff in error.

*Everest & Waggener*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: S. Sprague brought this action in the district court of Cloud county against the Missouri Pacific Railway

Company, alleging, in substance, that the defendant was a common carrier, and that on or about the 2d day of March, 1883, for a valuable consideration, the railway company undertook and agreed with the plaintiff to safely carry over its road from Atchison to Concordia certain stock, goods, wares, and merchandise; that he delivered the property mentioned for shipment in good condition at Atchison, but the defendant negligently and carelessly managed the car upon which the property was shipped, and by reason of such negligence and without any fault on the part of the plaintiff, four of the horses so shipped by the plaintiff were thrown down, bruised and injured so that one of them died, and the others were more or less disabled, to the damage of plaintiff in the sum of $500. The railway company denied the allegations of negligence, and the terms of the contract as stated by the plaintiff, and alleged that the property had been shipped in accordance with the terms of a special agreement entered into between the plaintiff and the defendant, wherein it was stated that the company transported live stock only in accordance with certain rules and regulations, which were mentioned, and that, in consideration that the defendant company would transport for the said plaintiff the said property at the rate of $30 per car, the same being a special rate lower than the regular rate mentioned in the freight tariff of the railway company, and other considerations, the plaintiff agreed to release the defendant from some of the responsibility and risks imposed by law upon the railway company when acting as a common carrier. The contract is set out at length in the answer, and it provided that the plaintiff should load and unload his stock at his own risk, and feed, water and attend to the same at his own expense. He was also to accompany and care for the stock while it was being transported over the defendant's road, and for that purpose the railway company was to furnish the plaintiff free transportation over its road for one person from the point of shipment to the destination.

Among the stipulations of the contract is the following:

"And for the consideration before mentioned, said party

of the second part further agrees that as a condition precedent to his right to recover any damages for any loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station agent, before said stock is removed from place of destination above mentioned, or from the place of the delivery of the same to the said party of the second part, and before such stock is mingled with other stock."

The defendant then alleged that the horses were unloaded and taken from the car at Clifton by the duly-authorized agent of the plaintiff, who refused the defendant the right to transport the same to Concordia, and that when he obtained possession of the same he was well aware of their condition, and well knew whether they had sustained any injury or damage; and that neither the plaintiff nor anyone acting for him, prior to the commencement of this action, made any demand in writing for any damages sustained to said stock, and never at any time gave any notice in writing of plaintiff's claim for any damages, loss or injuries to said stock, to defendant, or any of its officers or agents. The reply of the plaintiff was a general denial, not verified. Upon the trial it was expressly admitted that the special contract set up in defendant's answer was signed and executed by the duly-authorized agents of the parties, and it was further admitted that if the plaintiff is entitled to recover under the contract for the injuries alleged by the plaintiff, the amount of such recovery should be $300. Testimony was then offered by the plaintiff to the effect that the horses were in good condition when delivered to the railway company at Atchison, Kansas. His brother was given a free pass over the road and accompanied the train upon which the horses were shipped, for the purpose of caring for the stock while it was being transported over the defendant's road. At several points on the route he inspected them, and found them to be still in good condition. At the station named Palmer, some distance east of Concordia, the horses were again examined by the plaintiff's brother, and were then all right, and after returning to the caboose and before leaving that station, he felt several jars, but was

unable to state what occasioned them, or whether the horses were injured thereby. Upon arriving at Clifton, the next station, he again examined the horses, and found that some of them were lying down, and apparently injured. He then demanded of the conductor that the car in which the horses were shipped should be backed up to the stock-yards in order that the horses might be removed from the car. This was done, when the horses were unloaded and found to be considerably bruised. He then refused to reload the horses upon the car, took possession of them, and caused them to be taken across the country to the plaintiff's farm, which was not far distant. The plaintiff further testified that when the car reached Concordia, he paid the price agreed upon for the transportation of the same; but that no notice has ever been given to the conductor of that train, or to any officer or agent of the railway company, prior to the commencement of this action, that he claimed any damages for the injury to his stock; that he knew the condition of the horses and the extent of the injury to them before they were taken to the farm, and yet he had not given any notice of any claim therefor. When the plaintiff closed his testimony, the railway company interposed a demurrer to the evidence, which the court, after consideration, sustained.

Upon this ruling the plaintiff raises and discusses several questions here, but as one of them disposes of the case, the others require no attention. If the contract of the parties, by which it was agreed that before the plaintiff could recover damages for any injury to his horses, is to be upheld, he must give notice in writing of his claim therefor to some officer of the railway company, or to its nearest station agent, before the horses were removed from the place of destination, or from the place of the delivery of the same to the plaintiff, and before they were mingled with other stock, then the demurrer to the evidence was rightly sustained, and the judgment should be affirmed. The plaintiff contends that the agreement is not binding upon him, because it is not one permitted by the laws to be made, and for the further reason that it is without consid-

eration. As a general rule, common carriers are held liable as insurers, and are absolutely responsible for any loss to the property intrusted to them, unless such loss is occasioned by the act of God, or the public enemy. It is now a well-established rule of law that this liability may be limited to a certain extent; but to accomplish this it must clearly appear that the shipper understood and assented to the limitation. Common carriers are not permitted, by agreement, or otherwise, to exempt themselves from liability for loss occasioned by their negligence or misconduct. Such limitations are held to be against the policy of the law, and would be void. But it is no longer questioned that they may, by special agreement, stipulate for exemption from the extreme liability imposed by the common law, provided that such stipulations are just and reasonable, and do not contravene any law or a sound public policy. That the agreement in question was executed by the plaintiff, is admitted, not only by the pleadings, but it was expressly agreed to by him upon the trial. There is no pretense that any deceit or fraud was practiced upon him by the railway company in obtaining his assent to the agreement. So far as appears in the testimony, it was fairly and understandingly entered into and executed. His authorized agent, who accompanied the horses, and who had them in charge while passing over defendant's road, knew of this provision of the contract, and was acquainted with their condition before they were taken from the possession of the railway company. And the plaintiff, with full knowledge of this requirement, paid the freight charges agreed upon, after the injury had been done, without complaint, and without claiming any damages therefor; and gave no notice, nor did he make any claim for damages prior to the commencement of this action.

1. Common carrier; limiting liability.

The stipulation requiring notice of any claim for damages to be given cannot be regarded as an attempt to exonerate the company from negligence, or from the negligence or misfeasance of any of its servants. The company concedes that such an agreement would be ineffectual for that purpose. It is to be

regarded rather as a regulation for the protection of the company from fraud and imposition in the adjustment and payment of claims for damages by giving the company a reasonable opportunity to ascertain the nature of the damage and its cause. After the property has been taken from its possession and mingled with other property of a like kind, the difficulty of inquiring into the circumstances and character of the injury would be very greatly increased. That such a provision does not contravene public policy, and that it is just and reasonable, has been expressly adjudicated by this court. In *Goggin v. K. P. Rly. Co.*, 12 Kas. 416, a limitation substantially like the one in question was under consideration, and the circumstances of that case were much like those of the present one. It was there, as here, urged in support of the reasonableness and justice of the regulation, that the defendant was, at the time of the alleged injury, engaged in transporting great numbers of cattle and horses over its line of road, and which were being shipped to different points thereon, and that it would have been impossible for it to have distinguished one car-load from another, unless its attention was called immediately thereto, and that the object of the notice and demand mentioned in the contract was to relieve it from any false or fictitious claim, and to give it an opportunity to have an inspection of the stock before they were removed or mingled with others, and the company could thus have an opportunity to ascertain and allow the actual damages suffered. These reasons are said to be cogent; and the agreement is there held to be reasonable, just and valid. The decision in that case governs the one at bar, and the view which we have taken of the validity of this limitation accords with the decisions of other courts, among which the following may be cited: *Rice v. K. P. Rly. Co.*, 63 Mo. 314; *Oxley v. St. Louis, Kansas City & Northern Rly.*, 65 id. 629; *Express Co. v. Caldwell*, 21 Wall. 264; *Dawson v. St. Louis, Kansas City & Northern Rly.*, 76 Mo. 514; *Texas Central Rly. Co. v. Morris*, 16 Am. & Eng. Rld. Cases, 259, and cases there cited.

*2. Reasonable agreement.*

The plaintiff makes the further objection to the special agreement, that it is without consideration. It appears that the rate to be paid for the car in which the horses were shipped was omitted from the contract, and the plaintiff urges that as the price is not stated, it does not appear that any concession or reduction was made from the established rates, and therefore there was no consideration for the stipulation in question. But that position cannot be maintained. The contract was in writing, and signed by the parties to be bound thereby, and by virtue of our statute it imports a consideration. (Gen. Stat. ch. 21, § 7.) If more was needed to show that the objection is not well founded, it might be found in the plaintiff's petition, where he alleges that the contract was based upon a valuable consideration; and in his testimony, where it appears that $30 was the rate agreed upon and the amount that was paid by him under the contract. When these things are taken in connection with the statement in the written contract, that the price agreed upon was a reduction from the established rates, the consideration for the stipulation in question is sufficiently shown.

It follows from what has been said, that the judgment of the district court should be affirmed.

All the Justices concurring.