(9 App. Div. 4)
NORTH BRITISH & MERCANTILE INS. CO. OF LONDON & EDIN-
BURGH v. CENTRAL VERMONT R. CO. et al.

(Supreme Court, Appellate Division, Third Department. September 14, 1896.)

1. CARRIERS—BILL OF LADING—RATIFICATION OF CONDITIONS.
   A shipper who orders the goods to be held in an elevator awaiting his
   order thereby ratifies the conditions of the bill of lading to which he did not
   have time to object before the vessel sailed.

2. SAME—LIMITATION OF ACTION BY STIPULATION.
   A provision in a bill of lading, that any action thereon must be brought
   within three months after the loss or damage occurs, is reasonable.

3. SAME—SUBROGATION OF INSURER TO SHIPPER'S RIGHTS.
   Where a bill of lading provides that the carrier shall have the benefit of
   any insurance by the shipper, the insurer cannot, by subrogation to the
   rights of the shipper, assert any claim, as against the carrier, for loss of
   the goods by the carrier's negligence.

Appeal from judgment on report of referee.

Action by the North British & Mercantile Insurance Company of
London & Edinburgh against the Central Vermont Railroad Com-
pany, the Ogdensburg & Lake Champlain Railroad Company, and the
Ogdensburg Terminal Company, to recover the amount of insurance
which plaintiff paid for goods insured by it and lost while in transit
by the negligence of defendants. The complaint was dismissed,
with costs, and plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUT-
NAM, and MERWIN, JJ.

Lawrence Russell, for appellant.
Louis Hasbrouck, for respondent Central Vermont R. Co.
Alric R. Herriman, for respondent Ogdensburg & L. C. R. Co.
Charles G. Idler, for respondent Ogdensburg Terminal Co.

PARKER, P. J. The grain for the loss of which this action is
brought, except 10,120 bushels of corn belonging to Harvey & Co.,
and which was shipped under a Montreal bill of lading, and also
except so much as is known as the "Hurlbut Grain," was in the
possession of the defendants, as common carriers, under bills of
lading containing provisions which exempted them from damages
for loss occasioned by fire unless caused by the negligence of such
defendants or their servants. It is claimed that, as to a certain lot
of the grain shipped by Peavey & Co., in the schooner Hecla, the bill
of lading was delivered to them under such circumstances that they
were not bound by the conditions in it limiting the common-law lia-
bility of the defendants, and that hence, for the loss of that grain, no
negligence need be proven. If it be conceded that Peavey & Co.
had no knowledge of the terms and conditions in the bills of lading
under which it was the custom of these defendants to carry grain,
and that they did not receive it until after the vessel had sailed, and
it was too late, then, to object to such conditions, nevertheless,
Chandler had long dealt with them, and had knowledge of all the
limitations and conditions under which they received and carried
freight, and of their methods of transporting the same from Chicago

east. Chandler purchased the whole 50,000 bushels shipped by Peavey & Co. in the Hecla, and took an assignment of such bill of lading. Twenty-one thousand bushels of that amount were carried through by the defendants to Boston, under such bill of lading, and delivered to him. The other 29,000 bushels were, by Chandler's express directions, held in the elevator at Ogdensburg awaiting his order. Such order, given after he had received the bill of lading and was aware of its contents, was, I think, a ratification of all the terms thereof by him. From that time on it was, as between Chandler and the defendants, a valid contract, and as against him the defendants may avail themselves of all the conditions therein contained. As to all the other bills of lading, they were received by shippers who had long dealt with defendants, and who were knowing to their contents; and I have no doubt but that they were valid and existing contracts, as between them and the defendants. As to the Hurlbut grain, it was held by the defendants as warehousemen.

The referee has found that the fire was not caused by the negligence of the defendants. After a careful examination of the evidence, I am of the opinion that such conclusion is correct, and should not be disturbed by this court. This finding, in itself, would be a complete defense to the plaintiff's claim for all but the 10,120 bushels of corn, were it not for the fact that, prior to the fire, Chandler had ordered out of the elevator, and directed to be forwarded, some 38,400 bushels of grain belonging to him, and that the defendants had negligently omitted to send it forward. Such amount of grain was of the value of $18,244.50, and, owing to such neglect, it was all consumed by the fire, and Chandler thereby suffered damage to that amount. It is for the loss occasioned by the destruction of this grain, and for the 10,120 bushels of corn, only, that any action can be sustained; and as to this the question is whether the bills of lading under which it was held by defendants at the time of the fire contained in them any conditions which operate as a defense to the plaintiff's claim. Although the grain was in the elevator at Ogdensburg, it must, I think, under the circumstances and method by which the business was done, as described in the referee's report, be deemed still "in transitu," and the bills of lading to still furnish the measure of the defendants' liability. It was still in their possession as common carriers, and not as warehousemen.

One of the conditions of the Boston bills of lading, so called, was to the effect that the defendants should not be liable for any loss sustained "unless written claim for loss or damage shall be made to the person or party sought to be made liable within thirty days, and the action in which such claim is sought to be enforced shall be brought within three months after the said loss or damage occurs." It appears by the tenth finding of fact that all of Chandler's grain destroyed was received in the elevator under Boston bills of lading, except 4,000 bushels, which were received under a Montreal bill of lading. But on August 9, 1890, when such 4,000 bushels were sold to Chandler by the original shipper from Chicago, Harvey & Co., he (Chandler) ordered out of the elevator that 4,000 bushels, and a new

Boston bill of lading was on that day issued to him for the same; and such 4,000 bushels were a part of that which was negligently delayed, and therefore lost. Hence it appears that, at the time of the fire, all the grain so ordered forward was in the possession of the defendants under Boston bills of lading, containing the contract above specified. This action for the loss of this grain was not commenced until September 3, 1893, nearly three years after the fire, which occurred September 9, 1890. This delay in bringing suit seems to be fatal to the plaintiff's right to recover for· such grain in this action. · That such a limitation is a reasonable one is held in Railroad Co. v. Soper, 8 C. C. A. 341, 59 Fed. 879, with reference to this very fire, and to bills of lading precisely like the ones before us; and with this conclusion I concur. A common carrier may lawfully make such a contract limiting the right of action against it, if the time specified is a reasonable one. Jennings v. Railroad Co., 127 N. Y. 438, 451, 28 N. E. 394. See, also, Ripley v. Insurance Co., 30 N. Y. 136; Roach v. Insurance Co., Id. 546; · Mayor v. Insurance Co., 39 N. Y. 45. The plaintiff's cause of action for the grain so ordered forward is derived from Chandler by subrogation or assignment, and, of course, the rights so acquired are subject to any defense that existed against him. For this reason, therefore, it would seem that no action can be maintained by the plaintiff for the loss of the grain so ordered forward and lost to Chandler by the negligent delay of the defendants.

As to the 10,120 bushels of corn owned by Harvey & Co., inasmuch as the bill of lading under which it was shipped did not limit the common-law liability of defendants for its loss by fire, no negligence was necessary to be proved against them in order to recover for such loss. But there was a provision in such bill of lading to the effect that, in case of loss or damage of any of the goods named in it, for which any carrier under the same would be liable, they should have the benefit of any insurance by or for account of the owner of such goods. This plaintiff claims to recover for the loss of such corn, because, having insured Harvey & Co. for its loss, it has been subrogated to their claim against the defendants for the loss, and, having paid Harvey & Co. the amount so insured, they have received from them such an assignment of their claim. But, by reason of the contract in the bill of lading, the insurance so made to Harvey & Co. was for the benefit of these defendants, and under such circumstances no cause of action accrues by subrogation, or can be assigned, to the insurer, against the common carrier. That rule is clearly held in the following cases: Platt v. Railroad Co., 108 N. Y. 358, 15 N. E. 393; Fayerweather v. Insurance Co., 118 N. Y. 324, 23 N. E. 192; Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 312, 6 Sup. Ct. 750, 1176; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 397, 9 Sup. Ct. 469. Hence the plaintiff has not established a cause of action for the loss of the corn in question.

So, also, the so-called Boston bills of lading, under which all the rest of the grain in this case, except the Hurlbut grain, was shipped, contained a similar provision; and, inasmuch as the plaintiff's claim to recover for such grain is based solely upon a similar subrogation

and assignment from the owners, Chandler and Harvey & Co., another reason is apparent why it cannot recover therefor.

I do not find any error in.the rulings upon the trial that warrants a reversal of the judgment, and am therefore of the opinion that the judgment should be affirmed.

Judgment affirmed, with costs. All concur.