MISSOURI, K. & T. RY. CO. v. DAVIS.

No. 85.    Opinion Filed September 14, 1909.

(104 Pac. 34.)

1.  **CARRIERS—Carriage of Live Stock—Notice of Loss—Sufficiency.** A contract between a railroad company and a shipper of a car of mules stipulated that, as a condition precedent to his right to recover for any loss to such stock, the shipper should give notice in writing to the conductor in charge of the train, or to the nearest station or freight agent, before the mules were mingled with other live stock or were removed from the pens at destination. The mules shipped were during the same afternoon on which they arrived removed from the pens to the barn of the shipper which adjoined the right of way of the railway company, and was nearer its depot than its stockpens. On the next morning after the arrival of the mules, while they were still in the shipper's barn, and before they had been

mingled with other stock, the shipper served upon the station agent a notice of his claim for damages. The agent, after the mules had been placed in shipper's barn, and before they had been mingled with other stock, had an opportunity to, and did, on the day of their arrival and ' on the day the notice was served, examine and inspect them, and made memoranda of their injuries. **Held,** that the notice given was a substantial compliance with the contract on the part of the shipper, and was sufficient.

2.    **CARRIERS—Carriage of Live Stock—Actions for Damages— Time to Sue—Waiver by Agent.** The contract provides that no suit shall be brought against the carrier after the lapse of 90 days after the happening of the injuries complained of, and further provides that no agent of the carrier shall have any authority to modify, waive, or amend any of the provisions of the contract. The station agent at the destination of the mules, ·who was not shown to have any authority to adjust and settle claims for damages, and who did not represent that he had such authority, was without power to waive the provision of the contract requiring suit to be brought within 90 days by advising the shipper not to sue, that the company always preferred to settle that class of claims.

3.    **EVIDENCE—Entries in Ordinary Course of Business.** Entries in books made in the ordinary course of business at or near the time of the transaction to which they relate, when it is made to appear by the oath of the person who made them that they are correct, are admissible in evidence, but, when the same are not verified by the person who made them, and it is not shown that such person is dead or absent from the county, they are inadmissible.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County; A. T. West, Judge.*

Action by J. W. Davis against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

This action was originally instituted in the United States Court for the Southern District of the Indian Territory at Ada on July 2, 1907. Defendant in error, plaintiff below, by his petition seeks to recover the sum of $640 damages claimed to have been sustained by him by reason of the negligence of plaintiff in error, defendant below, in transporting a car of mules from Eest St. Louis, Ill., over its line of railway to Ada., Ind. T., now Oklahoma. The cause of action originated and the suit was in-

stituted before the admission of the state. Upon the admission
of the state, the case was transferred to the district court of
Pontotoc county for final disposition. The shipment of the car
of mules by defendant began on or about midnight of January
2, 1907, and terminated about 3 o'clock p. m. on January 7th
of the same year. The matters of which plaintiff complains in
his petition are that defendant was negligent, careless, and un-
reasonably slow in the handling of the car of mules and unrea-
sonably delayed the same, and that during the transportation
thereof frequent demands were made by plaintiff for the privi-
lege of feeding, watering, and otherwise caring for the mules,
which demands were by the carrier refused; that by reason of
the careless and negligent handling of the mules and the long
delay in their shipment, and the denial of the right to feed and
water them, when the mules reached their destination, they were
much emaciated, shrunk in weight, tired, bruised, cut and other-
wise injured, and that, by reason of said injuries, they were de-
preciated in market value to the amount of $20 per head. De-
fendant answered, denying all the allegations of negligence and
injury to the mules and depreciation of the market value, and
further alleged that the shipment of the mules was made under
a special contract containing provisions which had not been ob-
served by plaintiff, and, by reason of his failure to comply with
such provisions of the contract, he is now barred from maintain-
ing this action. Plaintiff filed a reply to the answer, and the
trial, which was to a jury, resulted in a verdict for him and a
judgment thereon for the sum of $320.

   *Clifford L. Jackson, W. R. Allen, Webb & Ennis,* and *Ralls
Bros.,* for plaintiff in error.—On contracts limiting time for
suit: *Railway Co. v. Trawick,* 68 Tex. 314; *Railway Co. v.
Gatewood,* 79 Tex. 89; *Railway Co. v. Soper,* 59 Fed. 893;
Hutchinson on Carriers (3d Ed.) vol. 1, par. 448; Elliott on
Railroads (2d Ed.) vol. 4, par. 1512; *Railroad Co. v. Phillips,*
17 Okla. 264; *Deming Inv. Co. v. Insurance Co.,* 16 Okla. 1;

*Railway Co. v. Kirkham,* 63 Kan. 255; *Sprague v. Railway Co.,* 34 Kan. 347.

*Duke Stone,* for defendant in error.—citing: *Nairn v. Railway Co.,* 106 S. W. 102; *Rice v. Railway Co.,* 63 Mo. 314; *Oxley v. Railway Co.,* 65 Mo. 629; *Railway Co. v. Seligman,* 23 S. W. 298; *Ward v. Railway Co.,* 58 S. W. 28; *Richardson v. Railway Co.,* 62 Mo. App. 1; *Railway Co. v. Steele* 33 N. E. 236; *Popham v. Barnard,* 77 Mo. App. 619; *Railway Co. v. Temple* (Kan.) 27 Pac. 98; *Jennings v. Railway Co.* (N. Y.) 28 N. E. 394; *Railway Co. v. Sanders,* 135 Ala. 504; *Osterhandt v. Railway,* 62 N. Y. Supp. 134; *Ry. Co. v. Thomas,* 7 L. R. A. (N. S.) 1041; *Ormsby v. U. P. R. Co.,* 4 Fed. 706; *Ry. Co. v. Collins,* 27 Pac. 99; *St. Louis, I. M. & S. Ry. Co. v. Jacobs,* 68 S. W. 248; *Railway Co. v. Ayers,* 38 S. W. 515; *Ry. Co. v. Harwell,* 91 Ala. 340; *Glenn v. Southern Express Co.,* 8 S. W. 152; *Case v. Ry. Co.,* 39 N. E. 426; *Hinton v. Ry. Co.,* 75 N. W. 373; *Wood v. Ry. Co.,* 24 S. E. 704; *Harned v. Ry. Co.,* 51 Mo. App. 482; *Ry. Co. v. Adams,* 14 S. W. 666; *A., T. & S. F. Ry. Co. v. Wright* 95 Pac. 1132; *Cornelius v. Ry. Co.,* 87 Pac. 751; *Ry. Co. v. Fry,* 87 Pac. 754; *Ry. Co. v. Frogley,* 89 Pac. 905, *Darling v. Ry. Co.,* 93 Pac. 612; *Ry. Co. v. Poole,* 87 Pac. 465; *Hancock v. Ry. Co.,* 111 S. W. 519; *Ry. Co. v. Shearer,* 9 Am. & Eng. Ann. Cases, page 17; *Ry. Co. v. Kelly,* 26 S. W. 470; *Ins. Co. v. Norment,* 18 S. W. 397; *Ins. Co. v. Tobey,* 30 S W. 1113; *Ins. Co. v. Freedman,* 19 S. W. 1011; Vol. II, Wilson's Stat. of Okla sec. 4574, p. 1056; *Ry. Co. v. Murphy,* 30 S. W. 419; *Atkinson et al. v. Burt,* 53 S. W. 404; *Ry. Co. v. Henderson et al.,* 21 S. W. 878; 1 Greenleaf Ev., secs. 115-120; 1 Wharton Ev., secs. 238, 240, 250, 678, 683, 688; *Welsh v. Barrett,* 15 Mass. 380; *Bartholomew v. Farwell,* 41 Conn. 107; *Sneed v. State,* 1 S. W. 68.

HAYES, J. (after stating the facts as above). The contract of affreightment under which the mules were shipped contains the following stipulation: '

"The shipper further expressly agrees that as a condition precedent to his right to recover any damages for any loss or

injury to said live stock resulting from carrier's negligence. as aforesaid, including delays, he will give notice in writng to the conductor in charge of the train or the nearest station or freight agent of the carrier on whose line the injuries occur before said cars leave that carrier's line, or before the live stock are mingled with other live stock or removed from pens at destination."

The mules arrived at Ada about 2 o'clock in the afternoon, and were shortly thereafter unloaded from the car into the stockpens of the company, from which they were immediately taken to plaintiff's barn which was near the company's depot at Ada and adjoins its right of way. No written notice of claims for injuries to the mules was served upon the agent of the company before the mules were taken from its stockpens, nor at any time during that day, but the station agent of the company at Ada during the afternoon of their arrival inspected the mules in the barn of plaintiff before they were mixed with other stock, and made a written memorandum of their injuries and condition. On the next morning a written notice of claim for damages was served by plaintiff's attorney upon the agent of the company. At the time of the service of this notice the mules were in plaintiff's barn, and had not been mixed with other stock. They were conveniently located to the depot of defendant, where they could be easily inspected by the company's agent, and were inspected by the agent on the day the notice was served.

Upon this issue the court instructed the jury as follows:

"You are instructed that the railroad company has a right to limit its responsibility to the owners in the carrying of stock or goods by special contract so long as the limitation does not affect its liability on account of negligence or misconduct. Defendant alleges that the mules were removed from the pens at their destination in Ada, Okla., prior to the time that written notice was given for any claim for damages because of said injuries. Should you find from the testimony that the mules were so removed, and, further, that the mules were injured so as to depreciate in value, and that the injury to the mules was caused by the carelessness and negligence of the agents and servants of the defendant company, and that the company had a good, fair, and reasonable

opportunity to examine and inspect said mules, and to know their condition after they were removed without unreasonable inconvenience, you will then find that the service of the notice or application for damages was made in due time, and the company is not absolved from liability because of the fact that written notice was not given to the company before said mules were removed from the pen at their destination. The purpose of said notice is that the company might have a fair and reasonable opportunity for examination and inspection of the condition of live stock transported under its management before it shall be placed beyond its reach and beyond possibility of identification."

This instruction is one of defendant's assignments of error for reversal. Stipulations in contracts of affreightment the same as, or similar to, the one now under consideration, where not in conflict with statutory provisions, are held valid by the weight of modern authorities, where such contracts are fairly entered into and are found to be reasonable under all the circumstances. The theory of the courts upon which such stipulations are sustained is that the requirement is a reasonable one, and that the object and purpose of the stipulation is to give the railway company an opportunity to inquire into the alleged loss or damage claimed without expense and inconvenience, so that unjust claims may be thwarted and the company enabled to protect itself against fictitious and fraudulent claims. *Richardson v. C. & A. Ry. Co.,* 62 Mo. App. 1; *Pennsylvania Co. v. Shearer,* 9 Am. & Eng. Ann. Cas. 15, and authorities cited in note thereto. Defendant's contention, in effect, is that the failure of plaintiff to give to the agent of the company notice of his claim for damages before the mules were removed from the stockpens of the company bars his right of recovery for any damages he may have sustained, notwithstanding he gave such notice before the mules were mixed with other stock, and before they were so far removed that the company could not without expense and inconvenience examine them and ascertain their condition. A literal compliance with the terms of the contract is insisted upon by

the company, and it is contended that substantial compliance with the contract is not sufficient.

Counsel for defendant in support of this contention rely principally upon *Railway Co. v. Phillips*, 17 Okla. 264, 87 Pac. 470, and *M., K. & T. Ry. Co. v. Kirkham*, 63 Kan. 255, 65 Pac. 261. Neither of these cases is exactly in point. The contract involved in each of them required a written notice of claim for damages before the live stock were mingled with other live stock or removed from the pens at destination. In *Railway Company v. Phillips* there was no claim by the shipper that he had complied with the contract, either strictly or substantially, and no claim that waiver had been made by the company. No notice, written or otherwise, was ever given by him to the company before the institution of the action. In *M., K. & T. Ry. Co. v. Kirkham* the facts are somewhat similar to the facts in the case at bar. The station agent was at the station, and saw the condition of the stock when they were delivered. Plaintiff at once drove the stock away, and then, on the next day, made demand in writing for his damages. The case appears to have been tried on the theory that the provision of the contract requiring the written notice before the stock was removed from the pens at destination was waived by reason of the acts and knowledge of the agent of the company of the condition of the cattle at the time of their arrival. No discussion by the court is made in that case of whether there had been a substantial compliance with the requirements of the contract; nor does it appear from the recital of facts in the opinion that the cattle at the time the written notice was served by the shipper were at such place that they could be examined by the agent of the company without inconvenience or expense, or that at the time of the service of such notice they had not been mixed with other cattle, or that they were so situated that the purposes for which the notice was required to be given could be accomplished. That the court did not intend in that case to hold that, unless a written notice is served in strict and literal compliance with the contract, it is in-

sufficient, and that a substantial compliance with the contract requiring the service of such notice, although it furnishes to the railway company an opportunity to accomplish and does accomplish all the purposes of a notice served in strict compliance with it, is insufficient, is further evidenced, we think, by the fact that no reference is made to *A., T. & S. F. Ry. Co. v. Temple,* 47 Kan. 7, 27 Pac. 98, 13 L. R. A. 362, in which the opposite rule is adopted, and we think that, if the court had intended to reverse the rule adopted by it in the Temple Case, it would have referred to that case. We think that the court intended to hold in the Kirkham Case only that, where a contract denies to an agent of the company the power to waive or modify any of the conditions thereof, an agent of the company cannot waive the requirements of the contract for a written notice, but that it does not hold that the written notice must be in strict, literal, technical compliance with the contract. The court in that case cited with approval, and in a great measure bases its decision upon, the doctrine of *Goggen v. K. & P. Ry. Co.,* 12 Kan. 416, and *Sprague v. Mo. Pac. Ry. Co.,* 34 Kan. 347, 8 Pac. 465.

In *Goggen v. K. & P. Ry. Co.* the contract involved required the notice to be given "before or at the time the stock is unloaded." A strict construction of this phrase of the contract would require the notice to be given before or at the time of the unloading, but the court said that this stipulation did not require that the notice be given at the identical moment of the unloading of the stock, but that it must occur so immediately that the object sought by the notice can be obtained. The language of the contract in the case at bar is that the written notice shall be given "before the live stock are mingled with other live stock or removed from the pens at destination." Under a strict construction of this contract, if plaintiff had taken his mules from the pen, which was situated one-half mile in distance from the company's depot, and, without taking them from the premises of the railway company, had driven them near to the depot for the purpose of filing his written claim, and giving the agent

an opportunity to inspect them, his compliance with the contract would have been insufficient. Such construction in our opinion is not required to accomplish the purposes of the provision of the contract, nor is it in harmony with the theory upon which the courts sustain the validity of such stipulations, and such construction would serve only as convenient means for carriers often to avoid just liabilities.

A., T. & S. F. Ry. Co. v. Temple, supra, was an action for damages for injuries to a mare and three mules. The condition of the stock was made known to the station agent of the company at the place of destination, and he consented to the removal of the stock from the car, and had an opportunity to examine and inspect the stock after their removal, and before they had been mingled with other stock or removed from the place of destination. A written notice of damages was transmitted to the claim agent of the company four days after the removal from the stockpens, and ten days thereafter, upon death of one of the animals, a subsequent notice was given. It was held that a substantial compliance with the contract requiring notice in writing of any claim for damages to be given by the shipper before the stock is removed from the place of destination or from the place of delivery had been made by the shipper. The court, after stating that the railway company relied upon the cases of Goggen v. K. & P. Ry. Co. and Sprague v. Mo. Pac. Ry. Co., supra, said:

"In the former case no written notice was given for more than a year after the cattle were injured. In the latter case no notice was given before suit was commenced. In the case before us written notice was given within a few days after the stock arrived at Pierceville, and before the mules were taken from the place of destination. While the carrier may stipulate by contract that notice of a claim for damages shall be given within a specified time in order to be valid, still the construction upon such stipulation must be reasonable and adapted to the circumstances of each case."

The facts in that case were very similar to the facts in the

case at bar, and an instruction in almost the identical language of the instruction complained of here was held good.

*A., T. & S. F. Ry. Co. v. Collins,* 47 Kan. 11, 27 Pac. 99, is another case which seems to be in point. In this case the action was for damages for the loss of a mare shipped under a contract which required notice in writing of 'claims for damages to be served upon the officers of the company before the stock was removed from the place of delivery or place of destination. The mare was removed from the place of delivery on March 5, 1907, to the owner's barn, where she was kept separate from other stock until the 10th or 12th of March of the same year, when written notice was served. The court held the notice sufficient.

In a very recent case decided by the Supreme Court of Kansas, brought by a shipper of live stock to cover losses arising from negligence of the carrier on a contract requiring a written notice to the officers of the company or the nearest agent before the removal of the stock from the place of destination or before they should be intermingled with other stock, a formal notice was held not required where the representatives of the company were at the stockyards when the cattle were received, and examined them. Mr. Chief Justice Johnson, who delivered the opinion, said:

"The representatives of the company were at the stockpens when the injured cattle were received. They observed their condition, and advised the consignees who were looking for the arrival of the cattle that they had been in a wreck. When the cattle did arrive, these representatives of the company inspected them, and advised that they be sold at once, which was done| Under recent decisions, no notice was required as to some elements of the loss sustained, and, in any event, the purpose of the written notice was fully accomplished when the condition of the cattle was brought to the attention of the representatives of the company. * * * The railway company, having had a fair opportunity to examine the cattle, and to ascertain the extent of the injury resulting from its negligence, had the full benefit of the contract as to notice." (*A., T. & S. F. Ry. Co. v. Wright* [Kan.] 95 Pac. 1132.)

In the case at bar the railway company had a representative who had an opportunity both before and after the written notice was served upon him by the shipper to examine and inspect the condition of the mules transported, and he did examine them. At the time of the service of the notice the mules were upon premises adjoining the railway company's property, nearer its depot than its stockpens, and had not been intermingled with other stock; nor had they been placed in such position as to be beyond certain identification or more inconvenient to inspect than they would have been if they had remained in the stockpen until the service of notice. While plaintiff has not literally complied with his contract, he did everything that was necessary to afford to the company all of the benefits of its provisions and to give to it every opportunity which literal compliance therewith would have brought to the company. His notice was given to the person and in the manner required in the contract. In our opinion his acts constitute such a substantial compliance with its requirements as to be sufficient.

The contract in the case at bar contains a further stipulation as follows:

"And no suit shall be brought against any carrier on whose line the injuries occur, after the lapse of 90 days from the happening thereof, any statute or limitation to the contrary notwithstanding, and no damages shall be recovered except that set forth in the required notice and claim."

The validity of this provision of the contract is not questioned, and the courts seem generally to uphold similar stipulations in contracts of affreightment where they are not in conflict with statutory or constitutional provisions. *G., C. & S. F. Ry. Co. v. Trawick*, 68 Tex. 314, 4 S. W. 567, 2 Am. St. Rep. 494; *G., C. & S. F. Ry. Co. v. Gatewood*, 79 Tex. 89, 14 S. W. 913, 10 L. R. A. 419; *North British & Merc. Ins. Co. v. Central Vermont Ry. Co. et al.*, 9 App. Div. 4, 40 N. Y. Supp. 1113; *Central Vermont Ry. Co. v. Soper*, 59 Fed. 879, 8 C. C. A. 341. Plaintiff seeks to relieve himself of the requirements of this provision

of the contract upon two grounds: First, that the company has waived same; and, second, that the nature and character of the injuries to the mules were such that the extent of his damages would not be ascertained within 90 days after the injuries occurred. The evidence upon his first contention was that the station agent at Ada, in conversations with plaintiff, advised him not to bring suit; that the railway company always preferred to settle claims of this kind. The contract contains a further provision that no agent of the railway company has any authority to waive, modify, or amend any of the provisions of the contract.

This action was not brought within the 90 days provided for by the contract. The court instructed the jury as follows:

"You are further instructed that if you find that the said suit was not filed within 90 days (and the court instructs you that it was not filed within 90 days), as stipulated in said contract, you will find in favor of the defendant, unless you further find that, by reason of the promises, implied or express, made by the defendant, its agents or employees, who had authority to make such promises, that plaintiff was induced to delay the institution of the suit after the 90 days, unless you further find that the injuries to the said mules were of such a nature and character that it was impossible to ascertain the extent of their damages within ninety days. In the event of either of these conditions, the plaintiff would be absolved from the obligation to bring the suit within 90 days."

That portion of the instruction bearing upon the waiver of the company is erroneous, for the reason that the facts in proof disclose that the agent whose conversation plaintiff claims induced him not to bring the suit was without authority to waive any of the provisions of the contract. The contract requires the shipper to serve notice in writing of his intended claim for damages upon the conductor in charge of the train or the nearest station or freight agent of the carrier and requires him within 30 days after the happenings of the injuries to file with some freight or station agent of the carrier on whose line the injuries occurred his claim for damages, giving the amount thereof. These provisions of the contract not only place an obligation upon the ship-

per relative thereto, but also authorize the station agents of the carrier to receive the notice and the claim for damage. But, in connection with this authority, the contract also imposes the limitation upon the agent's authority that he shall not have power to waive or modify any provision of the contract, not only as to such notice and claim for damages, but as to any other of the provisions of the contract, including that provision requiring suit to be brought within 90 days after the happening of the injury. There is no evidence in the record whatever showing that the agent at Ada had any other or further power relative to the claim of plaintiff than that referred to in the contract. That power was limited by the express stipulation that none of the provisions of the contract could be waived by him. It is not contended that the agent undertook to settle the claim with plaintiff' or that he had authority to do so. Plaintiff himself testified that he did not know whether the agent had any authority to settle the claim, that the agent never told him that he had any such authority, or that he would settle the claim. We can see how an agent of the company with power to adjust and settle the claim of plaintiff might, under express authority, or within the scope of his general authority, have power to modify, change, or waive any or all of the provisions of the contract, but there is an entire absence of evidence showing that the agent had any authority to settle and adjust the claim or that he undertook to do so or in any way endeavored to make it appear to plaintiff that he had such authority.

Mr. Justice Irwin, speaking for the court in *Railway Co. v. Phillips, supra,* and discussing this same provision in a shipper's contract, said:

"If the rule was laid down that station agents of a railroad company without express authority could modify or change the plain, unambiguous terms of a written contract entered into with the company, and in variance with the express stipulations and conditions of the contract, the usefulness of such contracts and the necessity of them would be absolutely at an end. Such a

doctrine would deprive the defendant company of the benefit of a contract which the courts have repeatedly declared to be reasonable, just, and valid."

See, also, *Railway Company v. Kirkman, supra.* In *St. Paul Fire & Marine Ins. Co. v. Mountain Park Stock Farm Co.,* 23 Okla. 79, 99 Pac. 647, a clause in an insurance policy provided that "no denial of liability or other act on the part of the company shall be deemed to waive or dispense with the furnishing of such proof," meaning proof of loss. After a loss had occurred under a policy, and pending the adjustment thereof, the insurance company wired the insured: "If you and Mr. Bates [referring to the company's adjuster] can settle go ahead loss referred to him I have no data." It was held that Mr. Bates, being charged with the whole duty of settling the loss by the insurance company, represented in this respect the company, and had power to dispense with such stipulations of the policy as the company itself could dispense with, including those stipulations for the benefit of the company which had reference to the matter of ascertaining the extent of the liability and which limited the right of action, but no such state of facts exists as to the agent of the company in the case at bar. There is no evidence that the station agent at Ada was clothed with any other or further power than he had when the contract of affreightment was entered into by the plaintiff, or than was conferred by the provisions of the contract. This contract specifically limits the power of the agent relative to any claim of plaintiff that might arise under the contract, and of these limitations plaintiff must be presumed to have had notice, because they constituted a part of the contract to which he was a party.

Plaintiff insists that, although the instruction upon the question of waiver is error, it was not prejudicial to defendant, for the reason that the nature and character of the injuries to the mules were such that the extent of his damage could not be ascertained within 90 days. Some of the mules did not become afflicted with the sweeny until after the expiration of 90 days,

and there is some evidence tending to establish that such disease was caused by the injuries received by the mules in transportation. But the evidence as to the cause of such disease is neither clear nor conclusive, and we cannot say that the jury found the facts upon this issue in favor of plaintiff, nor that they did not relieve plaintiff of the requirement to bring his suit within 90 days, under the instruction of the court as to waiver by the company of the provisions of the contract; and, under the state of the evidence, the instruction was prejudicial.

The railway company, in its effort to show that the mules had been transported without unnecessary delay, and that in transporting them opportunities had been afforded the shipper to feed and water the same, offered in evidence a book which had been kept by the company at its stockyards in Sedalia, Mo., in which a record is kept of the arrival and departure of all cars which come to its stockyards at that point for the purpose of unloading for feeding. W. L. Walker, foreman of the stockyards at that time, testified that said book was kept and that the record therein relative to this car of mules was made, not by himself, but by a clerk in the yards. Witness did not see the mules unloaded or reloaded; in fact, he had no personal knowledge whatever relative to the shipment, or the entries made in the book further than that they were made by a clerk who had charge of the book, and whose duty it was to make such entries. Plaintiff in error offered to prove by this record that the car of mules arrived at the stockyards at Sedalia at 7:45 p. m. and were unloaded and reloaded at 3:45 a. m. the next day. The court refused to permit the introduction of this record, and of this action of the court defendant complains in one of its assignments. To support its contention that this record was admissible as evidence, defendant cites following cases: *Louisville & Nashville Ry. Co. v. Daniel,* 122 Ky. 256, 91 S. W. 691, 3 L. R. A. (N. S.) 1190; *Firemen's Ins. Co. v. Seaboard Air Line Ry. Co.,* 138 N. C. 42, 50 S. E. 452, 107 Am. St. Rep. 517; *Donovan v. Ry. Co.,* 158 Mass. 450, 33 N. E. 583; *Fielder v. Collier,* 13 Ga.

495. An examination of these authorities discloses that they support the doctrine that where an entry is made by one person in the regular course of business, recording an oral or written report made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry provided the practical inconvenience in producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility in doing so. But this is not the question involved in this case. In each of those cases the entries were verified by the person who kept the record and made the entries. The record offered as evidence in this case was not made by the clerk upon oral written reports made to him by other persons, but, so far as the record discloses upon his own knowledge of the facts. No offer has been made to prove by the keeper of this book, who made the record therein, that the same is correct; nor is any excuse offered for failure to produce him as a witness, or his evidence relative thereto. Entries made by a person in the performance of his duties as clerk or agent of another, if they were made in the regular course of business contemporaneously with the facts recorded and are authenticated by the person making them, are competent evidence, or, if it is shown that such person is dead or out of the jurisdiction of the court, such authentication is not required. 1 Greenleaf, Evidence, pars. 115-120; *Bartholomew et al. v. Farwell*, 41 Conn. 107; *St. Louis, I. M. & S. Ry. Co. v. Henderson et al.*, 57 Ark. 402, 21 S. W. 878. The last case cited is in point. It was an action against a railroad company for negligence in transporting a car of cattle. The shipper attempted to prove by a record produced by a witness the movement of the cars at one of the stations on defendant's road. The record was not made by the witness who produced it, and was in the handwriting of another person who was absent. It was held that, without proof that the witness who made the record could not be found, such record was not admissible. The doctrine of the foregoing authorities is,

we think, in harmony with the weight of authorities. This question, however, seems to be settled in this jurisdicton by statute. Section 4574, Wilson's Rev. & Ann. St. 1903, provides that "entries in books of account may be admitted in evidence when it is made to appear by the oath of the person who made the entries that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county." In order for the record to have been competent, it was necessary for defendant to show by the witness who kept and made the entries that they were correct, and in the absence of such witness, to show that he was either dead or absent from the county in which event proof that the record was in his handwriting would have been sufficient, but defendant did not attempt to explain the absence of the person who kept the book and made the entries.

Plaintiff in error makes other assignments of error. We have carefully examined each of them, and find that they are either without merit or pertain to such matters as will not likely reoccur in the subsequent proceedings in this case, and we therefore deem it unnecessary to prolong this opinion by considering them.

For the error in the instruction of the court, the judgment is reversed, and the cause remanded.

All the Justices concur.