## MUSKOGEE ELECTRIC TRACTION CO. v. McINTIRE.

No. 2219. Opinion Filed April 5, 1913.

Rehearing Denied June 20, 1913.

(133 Pac. 213.)

1.  WITNESSES—Competency—Husband and Wife. Comp. Laws 1909, sec. 5842, provides that husband and wife are incompetent to testify for or against each other, except concerning transactions in which one has acted as agent of the other. Held that, where plaintiff, a married woman, on being injured in a street car accident, directed her husband to search for a negro passenger who was also on the derailed car, the fact that the husband was plaintiff's agent for that purpose did not render him competent to testify, in his wife's behalf, to a conversation between himself and the negro for the purpose of impeaching the latter.

2.  SAME—Objection. The incompetency of a husband to testify as a witness for his wife in an action to which she is a party, under section 5842, Comp. Laws 1909, must be raised in the trial court by an objection to the competency of the witness, and not merely an objection to the competency, relevancy, or materiality of the evidence offered by the witness.

3.  **APPEAL AND ERROR—Objection Below—Necessity—Waiver.** It is the objection made, and not that which might have been urged, that called for the ruling of the court. Had proper objection been made, it must be presumed that the objection would have been sustained, hence no error committed.

4.  **CARRIERS—Injury to Passenger—Burden of Proof.** Proof of an accident resulting in injury to a passenger, caused by the derailment of a street car, is sufficient to charge the company with negligence, and to cast upon it the burden of proof to show that the injury was caused without its fault.

5.  **NEGLIGENCE—"Res Ipsa Loquitur."** The principle expressed by the Latin formula "res ipsa loquitur," "the thing itself speaks," is that, where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from lack of proper care.

6.  **EVIDENCE—Book Entries—Preliminary Proof.** Entries in books of account, admissible as evidence under section 5907, Comp. Laws 1909, are inadmissible, when it does not appear, by the oath of the person who made such entries, that they are correct, and were made at or near the time of the transaction to which they relate, or where proof of the handwriting of the person who made the entries, in case of his death or absence from the county, is not made.

(Syllabus by Sharp, C.)

*Error from District Court, Muskogee County;*
*John H. King, Judge.*

Action by Etta McIntire against the Muskogee Electric Traction Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Gibson & Thurman,* for plaintiff in error.
*A. E. Patterson* and *J. H. Lilley,* for defendant in error.

Opinion by SHARP, C. Plaintiff sued defendant for injuries sustained while a passenger on one of its electric street railway cars being operated in the city of Muskogee. The allegations of negligence contained in the petition were general. It was charged that the car on which plaintiff was a passenger, while being operated at a high rate of speed, suddenly left the track by reason of the negligence, mismanagement, and want

of care of the servants, agents, and employees of defendant, in the negligent management and control of the car; and in the negligence of defendant in failing to furnish a safe and substantial railway upon and along its Fondulac Avenue line; and in failing to have and keep said car in good condition and repair. That upon the derailment of said car it came to a sudden and violent stop, thereby permanently injuring the plaintiff as set forth in her petition, to her damage in the sum of $5,300. Defendant's answer, in addition to containing a general denial, denied specially that plaintiff was a passenger on one of its cars on the day of the alleged injury.

Among the witnesses who testified for plaintiff was her husband, Perry McIntire. His testimony was objected to on the ground that he was an incompetent witness, being the husband of plaintiff. The court's action in permitting the witness to testify is assigned as ground for reversal. It was first shown upon examination of the plaintiff that she authorized her husband, about three weeks after the accident had occurred, to ascertain the name and whereabouts of a certain negro who was on the car at the time she was injured. Among other witnesses who testified for defendant was one Roger Wright, a negro, who testified that he was a passenger on a street car of defendant company on October 24, 1908, the date of plaintiff's injury, and that said car jumped the rail at Ninth street. Upon cross-examination, the time and place being fixed, Wright was asked concerning a certain conversation alleged to have taken place between him and Perry McIntire, in which he was said to have stated that at the time of the accident there was a negro woman on the car, who was injured by the accident, but that he did not know who she was. This conversation the witness denied, and it was then Perry McIntire was offered as a witness and testified that at the time charged he saw and had a conversation with Roger Wright, who told him that at the time the car was wrecked there was a negro woman on board.

It is insisted by counsel for plaintiff in error that McIntire had authority only to ascertain the name and whereabouts of Roger Wright, and when he had found Wright was the man that was on the Fondulac car that ran off the track at Ninth street, and his place of residence, he had done all that he was authorized to do, as his wife's agent, and that the witness was incompetent to testify as to any conversation concerning any other fact. Section 5842, Comp. Laws 1909, provides that husband and wife shall be incompetent to testify for or against each other except concerning transactions in which one acted as the agent of the other. The question therefore presented is: Was the conversation given in evidence one concerning a transaction in which he acted as the agent of his wife? The question, on principle, has recently been decided by this court in the negative, in the case of *Fish v. Bloodworth,* 36 Okla. 586, 129 Pac. 32, where it was held that a husband could not testify to a conversation between his wife and a third person, particularly when the conversation was not had with the adverse party, and did not concern the vital issue of the case, though it was shown that the husband was acting for his wife, and went with her to the bank to talk about the matter with the cashier, who afterwards was a witness in the case. The husband's agency to gather testimony for his wife did not render him a competent witness to testify to a conversation had with one found by him to have been a passenger at the time of the accident.

But is the defendant company in a position to urge a reversal on account of the admission of McIntire's testimony? When it was shown that Perry was the husband of the plaintiff on the date of the accident, objection was made to his giving any testimony, which objection was by the court properly overruled, as the witness, his agency having already been established, was competent to testify to facts arising within the scope of his agency. No objection to the following question, touching the conversation, was offered, but after the witness had answered the question, objection was made, not to the

competency of the witness to answer the particular question, but to the competency, relevancy, and materiality of the question, and that the question was not a proper impeaching question. The question presented was before the court in *Williams et al. v. Joins et al.,* 34 Okla. 733, 126 Pac. 1013, where it was held that, in order for one to avail himself of the incompetency of a witness, he must object to the witness' competency, and not merely to the competency of the testimony offered by the witness. While, had the original objection to the competency of the witness been properly urged, it would probably not have been necessary to renew the objection of the witness' competency to answer the following question, yet where the witness was competent to answer the first, but not the second, question, a proper objection should have been laid; otherwise the witness' competency to answer the question will be deemed to have been waived. Had proper objection been made it must be presumed that the objection would have been sustained, and no error committed. It is the objection made, and not that which might have been urged, that called for the ruling of the trial court. The question was competent, relevant, and material, and a proper impeaching question, hence the court did not err in overruling the objection as made.

It is insisted by plaintiff in error that there was not a scintilla of evidence showing any negligence or carelessness in the operation of the car, or evidence of the bad condition or any defect in the car. An examination of the record will not justify this statement. The conductor testified that an east-bound car on the Fondulac line got off the track at Ninth street on the date in question; that at that point the track was curved; and that the track there was generally covered up with mud, washed down around the rails, the street having been but partly graded. Another conductor named Beam, who relieved Conductor Blackwell, testified that when he went back on duty after dinner he found his car off the track at Ninth street; that Conductor Blackwell was in charge; that it took an hour to get the car back on after his arrival. In fact, the general manager of de-

fendant company testified that on the date of the accident but one car was operated on the Fondulac line, and that it was off the track on three separate occasions. The fact, therefore, of the derailment of the car stands admitted. It was not incumbent upon the plaintiff to offer further testimony to show the particular defect in construction or operation that caused the accident. Proof that she was a passenger, and that there was an accident from which an injury resulted, no question of contributory negligence being involved, was all that was necessary for plaintiff to establish.

The rule of demonstrative evidence of negligence applies in such cases. This rule is one now widely recognized by the authorities, and is referred to in Thompson's Commentaries on the Law of Negligence (volume 1, sec. 15) as follows:

"The principle is generally expressed in the Latin formula *'res ipsa loquitur,'* 'the thing itself speaks.' The meaning was thus expressed by Erle, J., in giving his judgment in a noted case: 'Where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care.' This definition has met with such approval at the hands of judges in subsequent cases that it has become, so to speak, a legal classic. The meaning is not that the mere happening of an accidental injury is, of itself and in the abstract, presumptive evidence of negligence; it is that, in the numerous cases which fall within the above definition of the principle, the fact of the accident, when viewed in connection with the circumstances under which it took place, tends to demonstrate negligence, subject to explanation."

Section 429, Comp. Laws 1909, provides that a carrier of persons for reward must use the utmost care and diligence for their safe carriage, must provide everything necessary for that purpose, and must exercise to that end a reasonable degree of skill. *Lane v. Choctaw, Oklahoma & Gulf Ry. Co.,* 19 Okla. 324, 91 Pac. 883. Where a duty such as that imposed by our statutes exists, there are certain cases where the facts and cir-

Vol. 37—44.

cumstances, connected with the injury itself, furnish such evidence of the breach of duty on the defendant's part as to constitute *prima facie* negligence, and, unless explained by the defendant in a manner consistent with right conduct on its part, to be held a sufficient discharge of the burden of establishing an affirmative case, on the plaintiff's part. White, Personal Injuries on Railroads, sec. 110, and authorities cited.

The rule is considered in Elliott on Evidence, sec. 1902, where it is said:

"It is very generally said, however, that proof of the happening of an accident which appears to have been due to defective roadbed, track, machinery, or appliances, or fault of the operation of the conveyance, makes out a *prima facie* case in an action by the passenger to recover for injuries resulting therefrom; and throws on the carrier the burden of proof to show his freedom from negligence, that is, from any want of the exercise of the high degree of care, skill, and foresight required of carriers of passengers in the prosecution of their business without respect to the defect or default which caused the accident."

The following section reads:

"It has been held that proof of injuries caused in the following ways is sufficient to raise a presumption of negligence under the *res ipsa loquitur* doctrine; * * * by derailment."

In his later work (Elliott on Railroads, sec. 1644), the author, after criticizing the rule as defined in some of the courts, says:

"The true rule would seem to be that when the injury and circumstances attending it are so unusual and of such a nature that it could not well have happened without the company being negligent, or when it is caused by something connected with the equipment or operation of the road, over which the company has entire control, without contributory negligence on the part of the passenger, a presumption of negligence on the part of the company usually arises from proof of such facts, in the absence of anything to the contrary, and the burden of going forward and producing evidence in order to escape liability is then cast upon the company to show that its negligence did not cause the injury."

Many cases supporting the rule announced are cited in the footnote. In the ordinary operation of the defendant's railroad its cars would not have left the rails. It is a matter of common knowledge that a street railway is so built, and the cars and roadbed so constructed, that when there is no defect in either, and the cars are run with due care, the latter will remain upon the track; and consequently, proof of the derailment of a car, in the absence of evidence to the contrary, justifies the conclusion that it resulted either from improper construction, failure to keep in proper repair, or negligence in operation. The following, and perhaps other, states hold that a presumption of negligence arises when an injury to a passenger results from a derailment: Alabama, Arkansas, California, Colorado, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Maine, Massachusetts, Missouri, Nebraska, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, Tennessee, Texas, and Wisconsin. The same rule has been followed by the Circuit Courts of Appeal in the Sixth and Ninth Circuits. Many authorities sustaining this view of the law will be found in extended footnotes to *Barnokski, Adm'r, v. Helson,* 15 L. R. A. 33; *McGinn v. New Orleans Railway & Lighting Co.,* 13 L. R. A. (N. S.) 601; *Philadelphia, Wilmington & Baltimore R. Co. v. Anderson,* 20 Am. St. Rep. 483. While in the majority of reported cases the rule was invoked where the accident occurred on steam railways, there is no principle upon which an exception to the rule can be made in cases of street railways, especially where operated by electricity or steam power. The reason of the rule is equally applicable to electric cars operated in a city. *Bergen County Traction Co. v. Demarest,* 62 N. J. Law, 755, 42 Atl. 729, 72 Am. St. Rep. 685; *Electric Ry. Co. v. Carson,* 98 Ga. 652, 27 S. E. 156; *Bosqui v. Sutro Railroad Co.,* 131 Cal. 390, 63 Pac. 682.

It is next insisted that the court erred in not admitting as evidence the car record book identified by its general manager, showing the record of runs, and containing a daily record of car numbers, number of runs, number of both motorman's and con-

ductor's badge, motorman's and conductor's name, with number of hours that each worked, giving the time that each went on and off duty, and that these entries in the book offered were kept by the motorman and conductor on duty. The court properly excluded this testimony. Section 5907, Comp. Laws 1909, is as follows:

"Entries in books of account may be admitted in evidence, when it is made to appear by the oath of the person who made the entries that such entries are correct, and were made at or near the time of the transaction to which they relate, or upon proof of the handwriting of the person who made the entries, in case of his death or absence from the county."

Assuming, without deciding, that the book so kept is such as is contemplated by the statute, no effort was made to show by the oaths of the persons making the entries, that such entries were correct, or that they were made at or near the time of the transaction to which they relate. Conductor Blackwell, who was in charge of the car at the time of its derailment, was present in court as a witness, but was not asked with reference to the record. The whereabouts of the motorman who was in charge of the car at the time of its derailment was not shown. Neither was any effort made to prove the handwriting of those not present, and who made the entries in the record; or that such person was dead or absent from the county. In short, there was no effort made to comply with the provisions of the statute. *First Nat. Bank of Enid v. Yeoman,* 14 Okla. 626, 78 Pac. 388; *Missouri, K. & T. Ry. Co. v. Davis,* 24 Okla. 677, 104 Pac. 34, 24 L. R. A. (N. S.) 866; *Missouri, K. & T. Ry. Co. v. Walker,* 27 Okla. 849, 113 Pac. 907; *Kasenberg et ux. v. Hartshorn,* 30 Okla. 417, 120 Pac. 956.

The opinion of the trial court should, therefore, be affirmed.

By the Court: It is so ordered.